# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

| Patrick J. Fisher, Jr. | Elisabeth A. Shumaker |
|---|---|
| Clerk | Chief Deputy Clerk |

July 7, 1999

**TO:**     ALL RECIPIENTS OF THE OPINION

**RE:**     98-3049, *In re Anderson*
Filed on June 7, 1999

The slip opinion filed in this appeal contains a typographical error on page 6, footnote two.  The footnote should read:

This amount reflects principal and interest.

Please make the correction to your copy of the opinion.

Sincerely,

Patrick Fisher, Clerk of Court

By:     Keith Nelson
Deputy Clerk

**F I L E D**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: DOREEN ANN ANDERSEN,

    Debtor.

---

DOREEN ANN ANDERSEN,

    Plaintiff - Counter-Defendant -
    Appellee.

v.

UNIPAC-NEBHELP,

    Defendant,

and

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
successor to Transitional Guaranty Agency
and successor in interest to Higher
Education Assistance Foundation,

    Defendant - Counter-Claimant -
    Appellant,

---

UNITED STUDENT AID FUNDS, INC.,

    Amicus Curiae.

No. 98-3049

N. Larry Bork, Goodell, Straton, Edmonds & Palmer, Topeka, Kansas, (Jodean A. Thronson, Staff Attorney, Educational Credit Management Corporation, St. Paul, Minnesota, with him on the brief), for Defendant - Counter-Claimant - Appellant.

Donald B. Clark, Wichita, Kansas, for Plaintiff - Counter-Defendant - Appellee.

Mac D. Finlayson, Flowers and Finlayson, P.C., Tulsa, Oklahoma, filed an amicus brief for United Student Aid Funds, Inc.

Before **ANDERSON** and **McWILLIAMS**, Circuit Judges, and **COOK,** District Judge.[*]

**COOK,** District Judge.

Defendant-Appellant Educational Credit Management Corporation brings this appeal from a final order of the Tenth Circuit Bankruptcy Appellate Panel, reversing the judgment of the United States Bankruptcy Court for the District of Kansas. We have jurisdiction by virtue of 28 U.S.C. § 158(d), and we affirm.

## I. Background

The parties have stipulated to the relevant and material facts. On December 27, 1990, the debtor herein, Doreen Andersen, filed for bankruptcy under chapter 13. At the

---

[*] The Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation.

time that the petition was filed, Andersen had outstanding student loan obligations, and the underlying promissory notes were held by various institutions. The claims of Higher Education Assistance Foundation (HEAF) and UNIPAC-NEBHELP represented the balance due on four student loan promissory notes executed by Andersen.[1] HEAF was the guaranty agency for the promissory notes, and UNIPAC-NEBHELP was the lending bank. Subsequent to Andersen filing her petition in bankruptcy, HEAF filed three proofs of claim for the balance due on the four notes.

Andersen filed a chapter 13 plan containing the following language:

> All timely filed and allowed unsecured claims, including the claims of Higher Education Assistance Foundation and UNIPAC-NEBHELP, which are government guaranteed education loans, shall be paid ten percent (10%) of each claim, and the balance of each claim shall be discharged. Pursuant to 11 U.S.C. § 523(a)(8), excepting the aforementioned education loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debt is dischargeable.

HEAF filed an untimely objection to the plan, which was denied for that reason. The plan, which included the above language, was subsequently confirmed. HEAF did not appeal the order of confirmation.

HEAF ceased operations on December 31, 1993, during the course of Andersen's bankruptcy, and transferred the majority of its bankruptcy loan portfolio, including Andersen's promissory notes, to the United States Department of Education. Also during

---

[1] The promissory notes are dated October 20, 1987, August 27, 1987, August 7, 1988, and August 8, 1988.

the course of Andersen's bankruptcy, in May 1994, the Department of Education transferred title of these promissory notes to Educational Credit Management Corporation (ECMC), which operates as a non-profit educational loan guaranty agency under the Federal Family Education Loan Program (FFELP).

Andersen completed all payments under the confirmed plan and was granted a discharge on December 22, 1994. ECMC reviewed Andersen's account during the course of processing the discharge and determined that the second and third promissory notes had not reached default status before Andersen filed for bankruptcy. Pursuant to the FFELP, ECMC initiated repurchase proceedings for the second and third notes with UNIPAC-NEBHELP, and the repurchase was completed on March 10, 1995. UNIPAC-NEBHELP took title to the second and third notes, and ECMC remained the guarantor of the repurchased notes.

Because Andersen had defaulted on the first and fourth notes prior to filing for bankruptcy, ECMC initiated collection proceedings on those notes, and on January 9, 1995, ECMC sent Andersen a letter requesting payment of the first and fourth notes. Andersen's counsel responded with a letter directed to ECMC on January 30 stating that the debt had been discharged. ECMC promptly replied and expressed its position that the debt was not discharged. ECMC continued collection activity, requesting payment on July 20, August 3, and August 10, 1995.

Andersen reopened her bankruptcy case on September 25, 1995, for the purpose of filing a complaint to determine the dischargeability of the debt which ECMC was attempting to collect. At that point, ECMC ceased collection activity. However, the reopening of the case constituted a basis for UNIPAC-NEBHELP to file a claim for payment of the second and third notes. ECMC paid UNIPAC-NEBHELP's claim on March 15, 1996, and title to the second and third notes was transferred back to ECMC.

Upon outlining these stipulated facts, the United States Bankruptcy Court for the District of Kansas stated the issue as follows: "whether a debtor may, by including language in a plan, discharge an otherwise nondischargeable debt in Chapter 13." The court noted that the real issue is "whether the plan provisions here constitute a binding adjudication of hardship." Reasoning that a judicial determination of undue hardship required Andersen to bring an adversary proceeding, wherein she would have had the burden of proof on the issue, the court held that, "Including language in a proposed Chapter 13 plan, which provides that student loans are discharged after completion of plan payments and that confirmation of the plan constitutes a finding of undue hardship, is not sufficient to overcome the presumption of nondischargeability of student loan debts." Responding to Andersen's argument that the confirmed plan nevertheless constituted res judicata on the issue of the dischargeability of the student loans, the court said that,

> Language in a plan does not constitute a judicial determination of hardship. HEAF and the other creditors were entitled to a higher level of due process

5

before the confirmation of the plan invokes the concept of res judicata. Congress' clear intent to except student loans from discharge cannot be overcome simply by inserting language into a proposed plan providing that confirmation of the plan constitutes a finding of undue hardship.

The court concluded that, because Andersen did not formally seek a determination of dischargeability, her student loans, in the amount of $15,085.42,[2] were not discharged under the confirmed plan.

Andersen appealed the decision to the Tenth Circuit Bankruptcy Appellate Panel (BAP). In re Andersen, 215 B.R. 792 (10th Cir. BAP 1998). Citing the fact that the issue herein arose after confirmation of the plan and after entry of the order of discharge, id. at 794, the BAP held that confirmation of the plan constituted a finding of undue hardship, rendering the student loans dischargeable. Id. at 796. The BAP thus reversed the ruling of the lower court, concluding that "the ultimate order of discharge properly discharged the balance of the student loan obligation." Id. This appeal followed.

## II. Discussion

The relevant facts are stipulated, and we review *de novo* the BAP's conclusions of law. Woodcock v. Chemical Bank, 45 F.3d 363, 367 (10th Cir. 1995). The Bankruptcy Code generally provides that a discharge does not discharge a debtor from a debt arising from an educational loan unless excepting such debt from discharge will impose an undue

---

[2]     This amount reflects principal and interest.

hardship on the debtor and the debtor's dependents.[3]  11 U.S.C. § 523(a)(8).[4]  This

general exception to the discharge of educational loans is applicable to the present chapter

13 case by virtue of 11 U.S.C. § 1328(a)(2).[5]  Based on these provisions, ECMC argues

that the determination of undue hardship is self-executing and requires a formal adversary

proceeding, apart from the plan process.  As we note above, the Bankruptcy Court agreed

with ECMC's position and held that Andersen's student loans were not discharged,

despite the confirmed plan's contrary language.  ECMC further argues that the BAP erred

---

[3]    Prior to October 1998, § 523(a)(8) provided that educational loans were not dischargeable unless, (A) the loan first became due more than seven years before the date of the filing of the petition (the "seven-year rule"), or (B) excepting the debt from discharge would impose an undue hardship.  However, The Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971, 112 Stat. 1581, 1837 (1998), eliminated § 523(a)(8)'s "seven-year rule" in all cases filed after October 7, 1998, leaving only the undue hardship exception to non-dischargeability.  While this amendment does not affect the present case, it does tend to support the argument that Congress has sought to progressively restrict the cases in which educational debts will be discharged.

[4]    Section 523(a)(8) provides that,

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

[5]    Section 1328(a)(2) provides, in relevant part, that, "As soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . ., except any debt – . . . of the kind specified in [§ 523(a)(8)]."

in reversing the judgment of the lower court and shifting the burden of proving a lack of undue hardship to the creditor. While we agree with certain propositions advanced by ECMC, we disagree with the conclusion which ECMC seeks to draw from those propositions in this case.

We note at the outset that ECMC is correct in stating that the "[d]ebtor bears the burden of demonstrating undue hardship" with respect to the dischargeability of educational loans. Woodcock, 45 F.3d at 367. And, we may assume that the Bankruptcy Court correctly held that a debtor must normally prove undue hardship by bringing an adversary proceeding directed to that issue. See Buford v. Higher Education Assistance Foundation, 85 B.R. 579, 581-82 (D.Kan. 1988); Bankruptcy Rule 7001. However, these statements do not resolve the present issue before us. The real issue here is not whether Andersen properly met her burden of proving an undue hardship, which she clearly did not, but whether confirmation of the plan constitutes a binding adjudication of hardship.

In the present case, Andersen placed language in her proposed plan that, if confirmed, would clearly have a negative impact on the claims of HEAF and UNIPAC-NEBHELP. As discussed above, the plan provided that these claims shall be paid ten percent, and the balance of each claim shall be discharged. Recognizing the requirement that such claims may only be discharged upon a finding of undue hardship, Andersen further provided in her plan that excepting such loans from discharge will impose an

8

undue hardship, that confirmation of the plan shall constitute a finding to that effect, and that the debt is dischargeable.

Despite the inclusion of this adverse provision in the proposed plan, HEAF failed to file a proper objection.[6] The objection that was ultimately filed by HEAF was denied as untimely, see State Bank of India v. Chalasani, 92 F.3d 1300, 1310 (2nd Cir. 1996) ("Even though deadlines may lead to harsh results in particular cases, their observance by the bankruptcy bar and their enforcement by courts lead to the salutary result of bringing finality to bankruptcy proceedings"), and the plan, containing the language at issue, was subsequently confirmed. Remarkably, HEAF then compounded its error by failing to contest the issue after confirmation or appeal the order confirming the plan. See In re Wade, 991 F.2d 402, 406 (7th Cir. 1992) (confirmation of a bankruptcy plan is a final, appealable order).[7] Indeed, these claims were only pursued by the successor guaranty

---

[6]    As the BAP noted, there is no allegation that HEAF did not receive notice of the plan, or that HEAF lacked the opportunity to object. Andersen, 215 B.R. at 795. "HEAF did respond and filed an objection, thereby indicating that HEAF understood that the plan intended to grant relief affecting HEAF's interests." Id. Thus, we do not perceive a due process issue here. Rather, we agree with the BAP that, given the fact that HEAF does not complain that it lacked adequate notice of Andersen's plan prior to confirmation, "it appears that due process has been accorded." Id.

[7]    Bankruptcy Rule 8001(a) provides that, "An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel . . . shall be taken by filing a notice of appeal . . . within the time allowed by Rule 8002." Rule 8002(a), in turn, provides, "The notice of appeal shall be filed . . . within 10 days of the date of the entry of the judgment, order, or decree appealed from."

agency after the plan was confirmed, all payments under the plan had been made, and an order of discharge had been entered.

Clearly, then, HEAF failed to take an active role in protecting its claims. While a debtor unquestionably has the burden or proving undue hardship in order to obtain a discharge of her student loan, a student loan creditor, like every other creditor, has a duty to ensure that its interests are adequately protected. A creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests. See American Bank and Trust Co. v. Jardine Insurance Services Texas, Inc., 104 F.3d 1241, 1246 (10th Cir. 1997) (creditors are obligated to take an active role in protecting their claims); In re Szostek, 886 F.2d 1405, 1414 (3rd Cir. 1989) (same). We do not believe that ECMC can now excuse HEAF's failure to protect its interests by arguing that Andersen failed to prove undue hardship in an adversary proceeding. This argument should have been raised in a timely filed objection to the plan prior to confirmation, or argued subsequently in a timely filed appeal attacking the confirmed plan. Neither was done here.

The essence of ECMC's argument is that, despite the repeated failures of HEAF to protect its interests, the Bankruptcy Court exceeded its authority in confirming a plan that contained provisions which were contrary to the Code. That is, ECMC contends that, although no timely objection to the plan was filed and no appeal was taken following confirmation, Andersen had the burden of initiating an adversary proceeding in order to

10

prove the otherwise uncontested fact of undue hardship. Without a judicial finding of such hardship at the close of an adversary proceeding, ECMC contends that the student loans cannot be discharged. We disagree. While Andersen surely had the burden of proving undue hardship, and while a discharge granted without such proof is inconsistent with the Code,[8] it is critical that HEAF, as the party affected by this determination, failed to properly challenge the language at issue, the interim rulings of the bankruptcy court, or the confirmed plan. As we discussed above, it is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result. We echo the wisdom of the Third Circuit that, "[w]hile we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the . . . plan rested with [HEAF], not with the bankruptcy court or the trustee." In re Szostek, 886 F.2d at 1414.

ECMC further argues that the result of the BAP decision effectively shifts the burden of proof to the student loan creditor. We disagree. At no time does the creditor have the burden of showing a lack of undue hardship. At most, the BAP decision merely recognizes the need for a creditor to protect its interests by timely objecting to a proposed

---

[8]   For the reasons stated below, a confirmed plan, or any provision thereof, is not rendered void merely because a certain provision of the plan may be inconsistent with, or even contrary to, the Code.

11

plan or appealing the confirmation order. If a creditor fails to do so, it cannot later complain about a certain provision contained in a confirmed plan, even if such a provision is inconsistent with the Code. See Lawrence Tractor Co. v. Gregory, 705 F.2d 1118, 1121 (9th Cir. 1983) (creditor's failure to raise objection at confirmation hearing or to appeal from order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding); Great Lakes Higher Education Corp. v. Pardee, 218 B.R. 916, 922 (9th Cir. BAP 1998) (when chapter 13 plan contains a provision that is contrary to the Code, student loan creditor with notice of the provision must object to the plan or appeal the confirmation order, and the failure to do so constitutes a waiver of its right to collaterally attack the confirmed plan after confirmation).

Aside from HEAF's failure to protect itself during the bankruptcy proceedings, the strong policy of finality also justifies the result reached by the BAP. We may assume that student loan debts are presumptively nondischargeable and that the debtor is under an obligation to prove undue hardship by bringing an adversary proceeding. While Andersen did not properly prove undue hardship pursuant to the requirements of the Code, we agree with the Third Circuit that, "after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code." In re Szostek, 886 F.2d at 1406. As the court recognized in In re Mammel, 221 B.R. 238, 240 (Bankr.N.D.

12

Iowa 1998), "[r]eviewing courts have been troubled by the tension created by inclusion of arguably inappropriate plan provisions and the need for finality in confirmed plan. . . . Most courts ultimately defer to the doctrine of res judicata because of the compelling need for finality in confirmed plans. They, therefore, enforce offending plan provisions even though acknowledging that a provision may be contrary to the Code. This is the majority view." See also DiBerto v. Meadows at Madbury, Inc., 171 B.R. 461, 472 (Bankr.D.N.H. 1994) (application of res judicata to confirmation order supports strong policy of finality in the reorganization process); In re Battle, 164 B.R. 394, 397 (Bankr.M.D.Ga. 1994) (absent timely appeal, confirmed plan is res judicata, and it is incumbent upon creditors to review the plan and object if they believe it to be improper; the binding effect of the plan extends to any issue actually litigated and any issue necessarily determined by the confirmation order, including whether the plan complies with the Code); United States v. Smith, 142 B.R. 862, 864-65 (Bankr.E.D.Ark. 1992) (unappealed order confirming chapter 13 plan gives res judicata effect to all issues pertaining to the plan that were raised or could have been raised at confirmation, even if order is erroneous).

Moreover, we have recently said that, "[u]pon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan

is res judicata and its terms are not subject to collateral attack."[9] United States v.

Richman, 124 F.3d 1201, 1209 (10th Cir. 1997) (citations and quotations omitted). We

therefore agree with the BAP that the order of confirmation is res judicata as to the issue

of hardship.[10] Andersen, 215 B.R. at 795. Although the provision at issue did not comply

with the Code, it is now too late for ECMC to make the argument that HEAF failed to

timely raise.[11] See Pardee, 218 B.R. at 926 (while the plan should not have been

confirmed with the discharge provision, once confirmed, the plan was binding on the

---

[9] The amicus curae argues that "we are not faced with a collateral attack on the confirmation order, but a direct attack on the confirmation order entered in a fashion which exceeds the bankruptcy court's authority." We disagree. HEAF failed to appeal the confirmation order within the time limits of Bankruptcy Rules 8001 and 8002. Hence, ECMC's present attack is a collateral attack on the confirmation order. See Pardee, 218 B.R. at 926 (because a confirmed plan binds the creditors and debtor under § 1327(a), a creditor cannot, after the order of confirmation is final and after the debtor fully performed on the Plan, collaterally attack the confirmation order by seeking to collect in direct violation of the terms of the Plan).

[10] Section 1327(a) of the Code provides that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." ECMC contends that this provision only binds the creditor for the duration of the plan, arguing that a nondischargeable debt is not governed by § 1327 after discharge in bankruptcy. We disagree with ECMC's position here. "The res judicata effect of confirmation may be eliminated only if confirmation is revoked, or if the case is later dismissed or converted to another chapter." 5 Collier on Bankruptcy ¶ 1327.01[1] (15th ed. 1996). As we explain below, this is not a case in which a debt that was nondischargeable throughout the course of bankruptcy suddenly became dischargeable at the conclusion of the proceedings. Rather, the debt became dischargeable at the point of confirmation.

[11] As the BAP said, "[h]ad HEAF timely objected, the issue now before the Court could have been dealt with and determined." Andersen, 215 B.R. at 795.

parties under § 1327(a) and the well-established principle that a party that fails to appeal a final order cannot collaterally attack the order). This is especially true where, as here, the plan has been confirmed, no appeal challenging the confirmation order was brought, all payments under the plan have been made, and the order of discharge has been entered. "The purpose of section 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order." 5 Collier on Bankruptcy ¶ 1327.01[1] (15th ed. 1996).

By the time ECMC began its collection efforts on the student loan obligation after Andersen emerged from bankruptcy, she certainly possessed a reasonable expectation that her student loans had been discharged as provided for in the plan; HEAF had previously failed to properly challenge the plan at any time, either by objection or appeal, Andersen had completed her payments under the plan, and she ultimately received an order of discharge. To permit ECMC to prevail at this late stage, subsequent to the order of discharge and several years after the plan was confirmed, would not only diminish the reliability and finality of the confirmed plan, but would surely disrupt Andersen's reasonable and settled expectations regarding her future financial planning. Accordingly, in light of HEAF's repeated failure to timely and properly challenge Andersen's plan during the course of the bankruptcy proceedings, along with the res judicata effect of the

15

confirmed plan and strong policy favoring finality, we hold that the balance of Andersen's student loan debt is discharged pursuant to the confirmed plan and the order of discharge.

ECMC argues that this result effectively turns an expressly nondischargeable debt into a dischargeable debt. For this proposition, ECMC cites and relies upon our decisions in DePaolo v. United States, 45 F.3d 373 (10th Cir. 1995), and Grynberg v. United States, 986 F.2d 367 (10th Cir. 1993). Both cases involved a nondischargeable tax debt, and we held that, because the debts of the Internal Revenue Service (IRS) are nondischargeable, a confirmed plan does not bar the IRS from assessing and collecting taxes. DePaolo, 45 F.3d at 376. We agree with the BAP that ECMC's reliance on these cases is misplaced. This case does not represent an attempt to transform a debt which remained nondischargeable throughout the plan period into a dischargeable debt at the conclusion of the period. Rather, unlike the tax cases, the finding of undue hardship in the confirmed plan changed the nature of the debt into a dischargeable debt. As the BAP said, "[t]he plan . . . resolved a potential controversy about whether payment of the student loan would result in an undue hardship to the debtor. Confirmation of the plan constituted a finding to that effect, thereby rendering the loan dischargeable." Andersen, 215 B.R. at 796.

We understand that Congress has sought to progressively limit the instances in which student loan debts may be discharged in bankruptcy,[12] and this intent is most recently seen in the 1998 amendments which eliminated the "seven-year rule" of dischargeability of educational loans. Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971, 112 Stat. 1581, 1837 (1998). Recognizing Congress' clear desire to restrict dischargeability in this area, we emphasize that our holding does not in any manner lessen a debtor's burden of proof on the issue of undue hardship when seeking to discharge an educational loan, nor do we suggest that this is an easy burden to overcome. Rather, under the particular facts of this case, we merely conclude that the strong policy favoring finality, coupled with the creditor's complete failure to properly protect its interests during the course of the bankruptcy proceedings, permit us to affirm the BAP's decision.[13]

Accordingly, the judgment of the BAP is **AFFIRMED.**

---

[12] As the Bankruptcy Court noted, prior to 1990, student loan obligations were dischargeable in chapter 13 after completion of plan payments. In 1990, Congress amended § 1328(a)(2), adding § 523(a)(8) as an exception to discharge. Student Loan Default Prevention Initiative Act of 1990, Pub. L. 101-508, §§ 3001, 3007, 104 Stat. 1388, 1388-25, 1388-28 (1990).

[13] Andersen requests an award of attorney fees and costs, pursuant to 11 U.S.C. § 524. The issue was not considered by either court below, and we decline to consider it at this time.