**In re WITASCHEK, Jr., Burton James and Witaschek, Kathleen Mary, Debtors.**

**Burton James Witaschek, Jr. and Kathleen Mary Witaschek, Plaintiffs,**

**v.**

**Sacramento County Bureau of Family Support, Defendant.**

**Bankruptcy No. 95–00299–R.**
**Adversary No. 01–0341–R.**

United States Bankruptcy Court,
N.D. Oklahoma.

Feb. 12, 2002.

Michael W. McCoy, Broken Arrow, OK, for debtors.

### MEMORANDUM OPINION

DANA L. RASURE, Chief Judge.

On November 30, 2001, this matter came on for trial of the adversary proceeding filed by the Debtor, Burton James Witaschek, Jr.[1] ("Witaschek" or the "Debtor") against the Sacramento County Bureau of Family Support ("BFS") (the "Trial"). Witaschek appeared through his counsel, Michael McCoy, and BFS appeared through its counsel, James Graves. The Court admitted exhibits, took stipulations of the parties, heard arguments of counsel, and took the matter under advisement.

**Procedural History**

On May 18, 2001, Witaschek filed a Motion to Reopen Case requesting that his Chapter 13 case, Case No. 95–00299–R (the "main case"), be reopened so that he could file "an adversary requesting sanctions, damages, costs and fees, for violations of the permanent [discharge] injunction" and that certain collection efforts be enjoined during the pendency of the adversary proceeding. Also on May 18, 2001, Witaschek filed a Motion for Ex–Parte Injunction which was deemed an Adversary Complaint for Injunction by Minute Order of September 7, 2001 (the "Complaint"). In the Complaint, Witaschek sought an injunction to prohibit BFS from garnishing his wages and commencing or proceeding with efforts to collect a debt for child support which he alleged was discharged in bankruptcy. On May 21, 2001, Witaschek filed his Supplemental Exhibits In Support of Debtor's Ex–Parte Motion.

---

**1.** Although the caption of this adversary proceeding includes Kathleen Mary Witaschek as a plaintiff, Plaintiff's counsel stipulated that the Complaint was filed only on behalf of Burton James Witaschek, Jr.

On May 21, 2001, the Court entered its Order Reopening Case. On May 23, 2001, the Court conducted a telephonic hearing during which BFS agreed to temporarily withdraw its wage garnishment pending a determination by the Court regarding the discharge of the debt.

On May 31, 2001, BFS filed its Opposition to Ex–Parte Motion for Injunction which was deemed an Answer to the Complaint by Minute Order of September 7, 2001 (the "Answer"). In its Answer, BFS alleged that Witaschek owes child support arrears of $8,875.37 [2] as of May 31, 2001, and contended that these arrears were not discharged in bankruptcy nor paid through the bankruptcy estate, that filing of a petition in bankruptcy does not stop the accrual of interest on child support debts, and that such interest is a nondischargeable obligation for which a debtor remains liable upon completion of the plan.

On June 20, 2001, Witaschek filed his Reply to Opposition to Ex–Parte Motion for Injunction (the "Reply"). In his Reply, Witaschek contended that California assigned its claim for child support to Oklahoma; that the Tulsa Child Support Enforcement Division of the State of Oklahoma Department of Human Services filed a priority claim for child support arrearages; that he paid the full amount of the child support claim through his completed Chapter 13 plan; that the plan's language provided that "no interest" was to be paid on the child support claim; that the confirmed plan was *res judicata* on the issue of interest on the child support claim; and

that all interest was discharged because BFS did not object to the plan.

On July 10, 2001, BFS filed Creditor's Closing Brief In Opposition to Ex–Parte Motion for Injunction ("Creditor's Brief"). In the Creditor's Brief, BFS contended that the child support debt was not assigned to Oklahoma; that Oklahoma is precluded from modifying California's child support order by federal full faith and credit law; that interest does not cease to accrue on nondischargeable debts during bankruptcy; and that the "no interest" language in the plan was ambiguous and any interest accruing pre-petition was not discharged. A declaration which stated that the child support obligation was not assigned to Oklahoma and that the mother of the child, Rachel O'Connor, is residing within the State of California was attached to the Creditor's Brief.

On November 22, 2001, Witaschek filed Debtor's Trial Brief ("Trial Brief") [3] in which he contended that California is collaterally estopped from relitigating the amount of back child support that was due and owing at the commencement of the main case; that Witaschek's confirmed plan is *res judicata* as to the plain terms contained therein; that once Witaschek paid the "principal balance," interest thereon ceased to accrue; and that BFS should be estopped from bringing its claim for interest because Witaschek was not made aware that BFS would want interest until the year 2000.

---

**2.** BFS stated that the $8,875.37 is comprised of (1) $450 in unpaid postpetition child support, (2) prepetition debt of $3,059.32 for accumulated and unpaid interest owing under California law as of the petition date (not included in the only allowed proof of claim for child support arrears or in the Debtors' plan), and (3) postpetition interest on the child support arrears that accrued and accu-

mulated postpetition on amounts claimed in the bankruptcy ($7,725) and on amounts not claimed in the bankruptcy. *See* Answer at 2.

**3.** The Trial Brief was corrected by Witaschek's Notice of Scrivener's Error in Debtor/Plaintiff's Trial Brief filed on November 26, 2001.

**Jurisdiction**

This Court has jurisdiction under 28 U.S.C. § 1334.[4] This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) or (O).[5]

**Findings of Fact**

Based upon the stipulations, the uncontested allegations in the pleadings, judicial notice of all proceedings in the main case and this adversary, the evidence and arguments of counsel presented at the Trial, and the relevant legal authorities, the Court makes the following findings of fact and conclusions of law according to Federal Rule of Bankruptcy Procedure 7052.

On January 16, 1981, the Superior Court of the State of California in and for the City and County of San Francisco (the "California Court") entered an Order requiring Burton Witaschek to pay $75 per month as child support for his daughter, Leah Fay Witaschek (hereinafter referred to as the "Child Support Order"). On April 24, 1981, the California Court entered an Agreement/Stipulation and Judgment/Order (Enforcement of Support) between the City and County of San Francisco on behalf of Leah Fay Witaschek and Burton Witaschek which modified the Child Support Order by (a) ordering that the District Attorney enforce the child support obligation since the minor child was receiving public assistance and (b) directing that Witaschek make all child support payments to the San Francisco District Attorney's Office, Family Support Bureau.

Leah and her mother, Rachel O'Connor, subsequently moved to Sacramento County, California, the mother assigned her child support rights to Sacramento County in exchange for AFDC assistance, and Witaschek moved to Oklahoma.

In April 1993, BFS requested that the State of Oklahoma [Child Enforcement Unit, Department of Human Services] ("OKDHS") provide assistance in collecting the child support arrears for BFS pursuant to reciprocal state laws existing at that time. California did not assign the Child Support Order to Oklahoma.

On February 7, 1995, at 8:31 a.m., Burton Witaschek and Kathleen Witaschek (collectively the "Debtors") filed a voluntary bankruptcy petition under Chapter 13 commencing the main case.

Later on February 7, 1995, Witaschek appeared pro se at a hearing in the Office of Administrative Hearings, Department of Human Services, in Tulsa in the case of *OKDHS v. Witaschek.*[6] At that hearing, an Administrative Enforcement Order was entered granting OKDHS an income assignment order which provides that "the current and continuing monthly support amount of $75.00 per month shall be withheld from" Witaschek's wages (the "Administrative Income Assignment Order").[7]

4. At the Trial, BFS raised for the first time the issue of sovereign immunity and moved for dismissal. The Court denied the request as untimely and found that BFS waived any claim to sovereign immunity when it filed a proof of claim in the main case and by participating in this proceeding.

5. In asserting that the confirmed Plan is *res judicata* as to the amount owed on the petition date, that his prepetition child support debt was discharged, and that BFS should be enjoined from garnishing his wages to collect a debt paid through the plan, Witaschek is

requesting that this Court construe and enforce its own orders and is seeking relief that would involve an adjustment of the debtor-creditor relationship. *See In re Loving,* 269 B.R. 655, 657–58 (Bankr.S.D.Ind.2001).

6. Although BFS was not a party to this proceeding, it received notice of the administrative hearing; BFS did not appear at the administrative hearing.

7. Under Oklahoma law, OKDHS is required to serve notice of the income assignment order upon Witaschek's employer and is entitled

The Administrative Income Assignment Order also provides that "if the underlying current support order was not issued by an Oklahoma Court, then the law regarding the effective length of the order of the issuing State shall apply" and that "[t]his Order for Income Assignment shall remain as long as the order upon which it is based is in effect ..." The Administrative Income Assignment Order also states:

That the amount of $ X representing the balance of prior judgments AND the amount of $7,275.00 representing new support arrears owed from *December, 1986* through and including *February, 1995,* for a total outstanding child support arrearage in the amount of $7,275.00 is hereby determined and established in accordance with 43 O.S. § 137.

The Administrative Income Assignment Order concludes that there is "no income assignment on the child support arrears due to the Defendant's filing of Chapter 13 bankruptcy." The Administrative Income Assignment Order is a final judgment for purposes of appeal and was not appealed.

On their Schedule F (filed February 27, 1995), the Debtors listed various duplicate claims for back child support owed by Witaschek (a) to BFS (California), (b) to OKDHS in the amount of $7,275 and (c) to Rachel O'Connor cross-referencing OKDHS. *See* Schedule F Nos. 6–8, 28–32, Doc. 7 in the main case.

On February 27, 1995, the Debtors filed a Proposed Chapter 13 Plan which provided for payment in full of "SPECIAL CLASS (no interest, unsecured, child support arrearage) Oklahom [sic] DHS for Mrs. Grumbles [8] $7,275 ... (Through California DHS) ... Payment by trustee to be made to Oklahoma DHS." Doc. 8 in the main case. The proposed plan also provided in a section titled "Other Provisions" that "[a]ll property of the Estate under 11 U.S.C. § 1306 shall be and remain property of the Estate and all stays shall remain in force and effect until the conclusion of the case or other order of the Court" and that "[u]nsecured Creditors without priority who fail to file a claim within [ninety days after the first date set for the meeting of creditors], will not receive any distribution under this Plan." *Id.*

On March 14, 1995, OKDHS timely filed an unsecured priority proof of claim in the amount of $7,275.00 as of February 1, 1995, for "child support collected pursuant to state and federal law for the County of San Francisco, CA" and referencing a court judgment obtained "2–7–95" (the "OKDHS Claim"). Attached to the OKDHS Claim were (1) a record of payments to OKDHS as of February 1, 1995, prepared by OKDHS showing that Witaschek was required to make monthly payments of $75, that $7,425 was the total of the monthly payments due for the period beginning in December 1986 through February 1995, and that Witaschek made one payment of $150 during that time period leaving a balance due of $7,275—the amount shown on the OKDHS Claim; and (2) a copy of at least the first page [9] of the

---

to a priority garnishment of his wages. *See* 56 O.S. § 240.2(E)(1), (3).

8. The reference to "Mrs. Grumbles" was not explained. The Debtors' Schedules indicate that Marcia Grumbles, an Oklahoma resident, was Witaschek's ex-wife. *See* Schedules A, F Nos. 18–19, H. Witaschek was never married to the mother of his child. *See* Trial Brief at 1, n. 1.

9. The original proof of claim filed by OKDHS is not included in the court file of the main case; a copy of the OKDHS Claim with the record of payments and the first page of the Child Support Order was submitted to the Court by Witaschek as one of his Supplemental Exhibits in Support of Debtor's Ex Parte Motion.

Child Support Order entered by the California court. No reference to "interest" was made on the record of payments or on the OKDHS Claim.

On March 21, 1995, the Debtors filed an Amended Proposed Chapter 13 Plan which was subsequently confirmed by Order Confirming Plan entered on April 20, 1995.

On March 6, 1996, the Debtors filed an Amended Proposed Chapter 13 Plan After Confirmation. On June 27, 1996, the Court entered its Order Amending Chapter 13 Plan After Confirmation in which the amended proposed plan as revised (the "Plan" or the "Confirmed Plan") was approved. The Plan provided for payment of almost all priority claims as "Priority Claims (At no interest)"; payment in full of the OKDHS Claim for child support as "SPECIAL CLASS (no interest, unsecured, child support arrearage) Oklahoma [sic] DHS 7,275.00 . . . Back Child Support for Mrs. Grumbles (Through California DHS)"; payment in part (41%) with interest (10%) of various secured claims as "Secured Claims"; and payment of approximately 3.52% of the claims of "Unsecured Claimants." The Plan also contained the same "Other Provisions" that were included in the original proposed plan. The provisions for payment of the OKDHS Claim were essentially the same in each of the Debtors' plans.

On July 2, 1996, well after the claims bar date of June 12, 1995, BFS filed an unsecured priority proof of claim in the amount of $10,612.70 which included charges for prepetition interest in addition to the unpaid monthly child support payments due from December 1986 through June 1996 ("BFS' Claim"). Copies of the Administrative Income Assignment Order, a Request to Docket Administrative Income Assignment, and a spreadsheet showing the application of payments and interest calculation by BFS were attached to BFS' Claim.

Throughout the bankruptcy, BFS and OKDHS received notice of the deadlines to file a proof of claim or to object to any of the proposed plans and notice of confirmation hearings. No party in interest objected to the confirmation of any of the Debtors' plans, and no creditor appealed any confirmation order or the order approving the proposed amended plan after confirmation. No objection to BFS' Claim was filed. No admissible evidence was presented concerning the lack of response to BFS' Claim.

During the Debtors' bankruptcy, the Chapter 13 Trustee paid $7,275, the amount listed in the Plan, to BFS through OKDHS. BFS applied the Trustee's payments first to postpetition current support obligations, then to outstanding prepetition and postpetition interest, and finally to principal arrears, all as required by California law.

On February 25, 2000, upon completion of the payments due under the Plan, the Court entered its Order Discharging Debtors which provided that Debtors were discharged "from all debts provided for by the plan or disallowed under 11 U.S.C. § 502, except any debt: . . . in the nature of . . . support of a . . . child of the debtor in connection with a[n] . . . order of a court of record . . . as specified in 11 U.S.C. § 523(a)(5)" (the "Discharge Order").

On August 22, 2000, the Debtors' Chapter 13 case was closed.

In November 2000, BFS initiated collection efforts against Witaschek to recover approximately $8,000. Witaschek's former counsel advised BFS that the debt had been discharged.

On May 18, 2001, Witaschek's current counsel filed the Motion to Reopen and the Complaint.

At Trial, the parties agreed that Witaschek failed to make certain postpetition child support payments and that he is liable to BFS for those missed payments and interest accruing thereon (the "Agreed Postpetition Debt").

**Conclusions of Law**

At Trial, Witaschek asserted that the only relief he is seeking is injunctive relief to prevent BFS from collecting any debt other than the Agreed Postpetition Debt. Witaschek admitted, however, that in order to adjudicate his request for relief, the Court must determine whether California is precluded from collecting any debt from Witaschek (other than the Agreed Postpetition Debt) and whether California is required by the Confirmed Plan to apply plan payments only to the principal amount listed in the Plan. BFS agreed that the only issue before the Court is whether an injunction should issue and argued that the Court had no authority to determine (a) the effect of the Administrative Income Assignment Order or (b) how plan payments were to be applied so long as OKDHS' Claim is paid or (c) what amounts are collectible outside the bankruptcy estate. Both parties stipulated that the Court has not been asked to determine the *amount* of any child support debt that Witaschek still owed. Witaschek admitted that he has the burden of proof regarding the issues before the Court. In essence, Witaschek is requesting that the Court find that the Administrative Income Assignment Order and the Confirmed Plan preclude BFS from collecting any debt other than the Agreed Postpetition Debt.

**A. The Administrative Income Assignment Order**

Witaschek contends that the Administrative Income Assignment Order is dispositive as to the amount of back child support owed by Witaschek as of February 7, 1995—the petition date, and that the State of California is collaterally estopped from relitigating the amount owed. *See* Trial Brief at 3. BFS contends that under the Full Faith and Credit for Child Support Orders Act (28 U.S.C. § 1738B), California has continuing exclusive jurisdiction over the Child Support Order and Oklahoma is precluded from modifying the amount, the scope, duration or the arrears owing on this order. *See* Closing Brief at 4. BFS also contends that the Full Faith and Credit Act (28 U.S.C. § 1738) requires this Court to give preclusive effect to California's Child Support Order. *See id.* at 2.

 "The doctrine of collateral estoppel, also known as issue preclusion, bars the relitigation of issues that have been tried in a prior lawsuit." *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 475 (10th Cir. BAP 1999), *aff'd*, 216 F.3d 1087 (10th Cir.2000) (citation omitted). The Tenth Circuit has held that "collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues." *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.1988) (citations omitted). "While a bankruptcy court ultimately determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine." *Merrill v. Merrill (In re Merrill)*, 252 B.R. 497, 504–05 (10th Cir. BAP 2000), *aff'd*, 2001 WL 909157 (10th Cir. Aug.13, 2001), *citing Wallace*, 840 F.2d at 765. Because the Administrative Income Assignment Order was entered in an Oklahoma administrative proceeding, the applicable law to determine whether the Administrative Income Assignment Order should be given preclusive effect is Oklahoma law. *See Merrill*, 252 B.R. at 504; *see also*, 28 U.S.C. § 1738 (requiring that all courts

give full faith and credit to state statutes and judicial proceedings).

■■■ Oklahoma's doctrine of collateral estoppel or issue preclusion provides that:

[O]nce a court has decided an issue of fact or of law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. Issue preclusion may apply when the party to be precluded has had a "full and fair opportunity" to litigate the issue that was adversely resolved. *The party relying on the defense of issue preclusion bears the burden of establishing that the issue to be precluded was actually litigated and determined in the prior action between the parties or their privies, and that its resolution was essential to a decision in that action.*

*Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 10, 976 P.2d 1056, 1060–61 (Okla. 1999) (footnotes omitted) (emphasis in the original).[10]

■■ In addition to satisfying the doctrinal requirements for issue preclusion, Oklahoma courts require that a party relying on a judgment for its issue-preclusive effect must "produce—as proof of its terms, effect and validity—the *entire* judgment roll for the case which culminated in the decision invoked as a bar to relitigation." *Id.* at ¶ 11, 976 P.2d at 1061 (footnotes omitted) (emphasis in the original). The judgment roll includes "the petition, the process, return, the pleadings

subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court...." *Id.* at ¶ 11 n. 11, 976 P.2d at 1061 n. 11, *quoting* 12 O.S. § 32.1 (1991).

■■ Witaschek failed to produce the entire judgment roll. Moreover, Witaschek failed to establish that (1) the amount of child support arrears due pursuant to the "underlying child support order" (California's Child Support Order) was an issue "actually litigated" before the Department of Human Services administrative law judge; (2) the determination of the amount of child support arrears was essential to the entry of the Administrative Income Assignment Order; (3) that BFS—not a party and not mentioned—was a privy of OKDHS; or (4) BFS had a full and fair opportunity to litigate the amount of child support arrears in that administrative proceeding. The Administrative Income Assignment Order is merely an administrative enforcement "fill in the blanks form" order which recites only the appearances of counsel for OKDHS and Witascheck pro se; makes no reference to interest or any compromise, modification or reduction in the amount of arrears; and seeks only to enforce an existing "underlying child support order." From the evidence presented, the Court concludes that the Administrative Income Assignment Order was merely an income assignment order for current support and is not entitled to have any preclusive effect.[11]

**10.** Neither party addressed the issue of whether Oklahoma or federal courts are required to give preclusive effect to the findings entered by a state administrative agency. Because the doctrine of issue preclusion is inapplicable for other reasons, the Court need not address this issue.

**11.** The fact that the Administrative Income Assignment Order was entered while the Debtors' Chapter 13 bankruptcy was pending

may also be relevant. The filing of a bankruptcy petition creates a broad automatic stay against, *inter alia,*

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, *administrative,* or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against

Furthermore, in order for the alleged determination of the amount of the child support arrears in the Administrative Income Assignment Order to have preclusive effect, the Office of Administrative Hearings of Oklahoma's Department of Human Services must have had jurisdiction and authority to modify the Child Support Order. BFS contends that no agency or court in Oklahoma had the authority to modify its Child Support Order, citing the Uniform Reciprocal Enforcement of Support Act ("URESA"), the Uniform Interstate Family Support Act ("UIFSA")[12] and 28 U.S.C. § 1738B ("Section 1738B"). Neither party presented evidence or authority that would enable this Court to determine whether URESA or UIFSA governs construction of the Administrative Income Assignment Order, i.e., the date *OKDHS v. Witaschek* was filed, the legal authority for commencing the action, or whether any transitional provisions of UIFSA were applicable.

 As of February 7, 1995, the date the Administrative Income Assignment Order was entered, Oklahoma's version of UIFSA provided that:

A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has is-

sued a child support order pursuant to a law substantially similar to this act.

43 O.S. § 601–205(D). California's version of UIFSA provided that:

A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

(1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Cal.Fam.Code § 4909(a). Because the individual obligee (the mother) resided and continues to reside in California and California issued the Child Support Order, California has continuing exclusive jurisdiction over the Child Support Order. As a result of California's continuing, exclusive jurisdiction, the registering sister state, Oklahoma, is precluded from modifying the Child Support Order under UIFSA. *See* Official Comment to 43 O.S. § 601–611.[13]

---

the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

\* \* \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a) (emphasis added). In the Tenth Circuit, actions taken in violation of the automatic stay are void and without effect. *See Job v. Calder (In re Calder),* 907 F.2d 953, 956 (10th Cir.1990). To the extent that the Administrative Income Assignment Order violated the automatic stay, the Administrative

Income Assignment Order is void and cannot be given any preclusive effect for that reason.

**12.** Both California and Oklahoma repealed their respective versions of URESA and enacted the then current version of UIFSA on January 1 and September 1, 1994, respectively.

**13.** *See also,* 43 O.S. § 601–603(C) ("Except as otherwise provided in this article, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction."). Additionally, under UIFSA's choice of law provision, the law of the issuing state (California) governs the payment of arrearages under the Child Support Order. *See* 43 O.S. § 601–604(A). "[C]alculation of whether the obligor

 Similarly, under URESA, Oklahoma did not have authority to modify the amount due to BFS. From 1990 until its repeal in 1994, Oklahoma's version of URESA provided:

> *Past due amounts which have accrued pursuant to a child support order* made ... by another state pursuant to a substantially similar act or any other law, *shall not be modified retroactively* or payment of all or a portion of the past due amount waived by a court of this state pursuant to this act, *except by mutual agreement of the obligor and the person or entity entitled to the child support.*

43 O.S. § 332 (1990), *repealed* by Laws 1994, c. 160, § 52, eff. Sept. 1, 1994. Under URESA, unless the responding court's order specifically modified a prior support order entered by the initiating state, the responding court's order is merely an "enforcement tool" and not a judgment entitled to full faith and credit, and the original order of support remains fully enforceable. *See e.g., State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez,* 941 P.2d 144, 148–49 (Alaska 1997) (footnote and citations omitted). Only *prospective* support obligations could be modified under URESA. *See Dept. of Human Services ex rel. Pavlovich v. Pavlovich,* 1996 OK 71, 932 P.2d 1080, 1082–86 (Okla.1997).

Also, pursuant to Section 1738B, the general rule is that "(t)he appropriate authorities of each State (1) shall enforce according to its terms a child support or-der made consistently with this section by a court of another State; and (2) shall not seek or make a modification of such an order except in accordance with subsections [not applicable here]." 28 U.S.C. § 1738B(a). A child support order is "made consistently with [Section 1738B]," if the court making the order had subject matter jurisdiction (to hear the matter and enter the order) and personal jurisdiction over the contestants under the laws of that court's state, and reasonable notice and opportunity to be heard was given to the contestants. *See* 28 U.S.C. § 1738B(c). It is undisputed that the Child Support Order was consistent with Section 1738B. Thus, under the facts presented, the Office of Administrative Hearings of Oklahoma's Department of Human Services had no jurisdiction or authority to modify the amount of child support due to California.

The Court concludes that Witaschek has not met his burden to establish that the alleged determination of the amount of child support arrears included in the Administrative Income Assignment Order should be given preclusive effect by this Court.

## B. Witaschek's Confirmed Plan

 Witaschek admits that child support is nondischargeable but appears to argue that his prepetition child support obligations were discharged pursuant to the terms of the Confirmed Plan. *See* Reply at ¶ 4. Witaschek contends "that the claim was listed as a special class [14] to be

---

has fully complied with the payment of current support, arrears, and interest on arrears, is the duty of the issuing state." Official Comment to 43 O.S. § 601–604.

**14.** Both parties asserted that the OKDHS Claim was a priority claim. While Section 523(a)(5)(A) provides that a child support debt assigned to a governmental entity is non-dischargeable, Section 507(a)(7)(A) provides that such an assigned claim is not entitled to priority. *See In re Blackstone,* 269 B.R. 699 (Bankr.D.Idaho Sept.12, 2001). Witaschek's Plan provided for payment in full of only the amount of the unsecured OKDHS Claim in a "Special Class" and provided only a 3.52% payback to the other unsecured claimants—effectively giving the OKDHS Claim priority

paid no interest: that the plan is res judicata; that [he] paid the full amount of the claim; and that no money is due to the State of California." *Id.* at ¶ 7. BFS disagrees that the plan language discharges any interest accruing postpetition and contends that child support debts and interest thereon are not dischargeable in bankruptcy. *See* Closing Brief at 4, 7.

■ The general rule is that the provisions of a confirmed plan bind each creditor regardless of whether the creditor's claim is provided for and regardless of whether the creditor has objected to, accepted, or rejected the plan. *See* 11 U.S.C. § 1327(a). However, that general rule does not apply if the claim of the creditor is nondischargeable. *See, DePaolo v. United States (In re DePaolo),* 45 F.3d 373, 375 (10th Cir.1995); *see also Grynberg v. United States (In re Grynberg),* 986 F.2d 367, 370 (10th Cir.), *cert. denied,* 510 U.S. 984, 114 S.Ct. 489, 126 L.Ed.2d 439 (1993) ("However, like any other holder of a nondischargeable debt, the IRS is also free to pursue the debtor outside bankruptcy.").

Witaschek relies on *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253 (10th Cir.1999),[15] to support his argument that the Confirmed Plan is *res judicata* as to the plain terms contained therein. Witaschek contends that under the "plain terms" of the Plan, the full amount of back child support owed on the petition date is included in the amount stated in the Plan, that no interest could accrue on the amount stated, and that BFS

must apply the plan payments only to the back child support. *See* Trial Brief at 3–4. In his Reply, Witaschek mischaracterizes the *Andersen* opinion by stating that "[t]he Court concluded that whatever terms are in a confirmed Chapter 13 plan 'are res judicata, and its terms are not subject to collateral attack.'" Reply ¶ 17. BFS correctly points out that (a) the language of the confirmed plan in *Andersen* is consistent with the bankruptcy code which permits the discharge of a student loan upon a finding of undue hardship, (2) "no language in the bankruptcy code exists that allows discharge of child support in bankruptcy," and (3) "the *Andersen* plan contained very explicit language discharging the student loans." Creditor's Brief ¶¶ 19–20.

In *Andersen,* the Tenth Circuit held that although the plan provision at issue did not comply with the Bankruptcy Code, the order of confirmation was *res judicata* as to the issue of hardship, thus rendering the student loans dischargeable and binding on the lender. 179 F.3d at 1258–59. The Tenth Circuit acknowledged that it had previously held in *DePaolo* and *Grynberg* that "because the debts of the Internal Revenue Service (IRS) are nondischargeable, a confirmed plan does not bar the IRS from assessing and collecting taxes," but distinguished its holding in *Andersen:*

> This case does not represent an attempt to transform a debt which remained nondischargeable throughout the plan period into a dischargeable debt at the conclusion of the period. Rather, unlike

---

to which it was not entitled. *See supra* at 674.

15. In *Andersen,* the debtor included specific language in her Chapter 13 plan that provided that only ten percent of her student loan claims shall be paid, that "the balance of each loan shall be discharged," that excepting such loans from discharge "will impose an undue hardship," and that "[c]onfirmation of debt-

or's plan shall constitute a finding to that effect and said debt is dischargeable." *Id.* at 1254. The lender failed to object to confirmation of the plan and did not appeal the order of confirmation. Following completion of plan payments, entry of discharge and collection attempts, the debtor reopened her bankruptcy case to file a complaint to determine the dischargeability of her student loan debt. *Id.* at 1254–55.

the tax cases, *the finding of undue hardship in the confirmed plan changed the nature of the debt into a dischargeable debt.* As the BAP said, "[t]he plan ... resolved a potential controversy about whether payment of the student loan would result in an undue hardship to the debtor. Confirmation of the plan constituted a finding to that effect, thereby rendering the loan dischargeable."

*Id.* at 1259–60 (citation omitted).

This case differs fundamentally from *Andersen* in two ways. First, the *Andersen* plan contained unambiguous specific language that resulted in the discharge of student loan debt. In this case, the "plain terms" of the Plan merely provide: "SPECIAL CLASS (no interest, unsecured, child support arrearage) Oklahom[a] DHS 7,275.00 Back Child Support for Mrs. Grumbles (Through California DHS)." There is no explicit statement that $7,725 includes all child support due and owing as of the petition date [16] or that interest on the child support debt would not accrue. In the context of Witaschek's Plan, the Court concludes that the term "no interest" simply means that no interest would be paid on the OKDHS Claim through the Plan—arguably because Section 502(b)(2) precludes the payment of unmatured interest on any claim (with some exceptions not applicable here) or because OKDHS did not include interest in its Claim.[17] Witaschek's Plan does not contain unambiguous specific language that tolls the accrual of postpetition interest on the child support arrearage or that provides for the discharge of otherwise nondischargeable debt or that directs the manner in which BFS must apply the Trustee's payments—if that were legally possible when dealing with child support debt. Witaschek provided no authority on point.

Second, in *Andersen,* "the debtor was attempting to accomplish a discharge that could be obtained under the Bankruptcy Code had the debtor followed the proper procedures [file an adversary proceeding] and provided the appropriate evidence [of undue hardship]." *In re Newburn,* No. 00 B 18249, 2001 WL 101733, *6 (Bankr.N.D.Ill. Feb.6, 2001). In this case, Witaschek is attempting to accomplish through his plan a result that contravenes the Bankruptcy Code—a discharge of child support debt which is nondischargeable without exception. Upon completion of all payments under a Chapter 13 plan, a bankruptcy court is required to grant the debtor a discharge of all debts provided for by the plan or disallowed under Section 502, with a few exceptions—including debts for child support. *See* 11 U.S.C. §§ 1328(a)(2), 523(a)(5). Although discharge exceptions are ordinarily construed

---

**16.** The Debtors listed BFS in multiple ways as an unsecured nonpriority creditor with a duplicate claim for back child support in Schedule F, but BFS did not timely file a proof of claim. In order to determine whether BFS might assert that the amount of its nondischargeable claim exceeded the amount of the OKDHS Claim and to reduce the amount of nondischargeable debt owed when his case closed, Witaschek could have filed a claim for BFS as permitted by Section 501(c) and Bankruptcy Rule 3004. *See Grynberg,* 986 F.2d at 372; *In re Kloeble,* 112 B.R. 379, 381 (Bankr.S.D.Cal.1990) ("The apparent consequence of the debtor's failure to file for the creditor within the time allotted under Rule 3004 is that the debtor remains burdened with the debt post-discharge to the extent the debt was nondischargeable.") As the holder of a claim for a nondischargeable debt, it was not necessary for BFS to file a claim or object to confirmation. *See In re Conner,* 242 B.R. 794, 799 (Bankr.D.N.H.1999) (the debtor "has the burden to raise the issue of dischargeability").

**17.** In any event, the "no interest" language provided no reason for BFS to object as BFS holds a nondischargeable claim. *See supra* n. 16.

narrowly in order to further the policy of granting a debtor a "fresh start," the policy underlying the discharge exception for enforcement of child support obligations *outweighs* the policy to permit a debtor the privilege of a "fresh start." *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir.1993). The Discharge Order specifically excepted from discharge any debt Witaschek owed for child support. The Court concludes that Witaschek's prepetition child support obligations were not discharged under the terms of the Confirmed Plan.

### C. Equity, tolling and equitable estoppel.

■ Witaschek's remaining arguments seek to avoid liability for interest that accrued on his prepetition child support debt. At the Trial and in his Reply, Witaschek argues (without citing authority) that it would be inequitable "to force him to pay more post petition in interest than the entire debt," the amount paid in the Plan, when California failed to notify him in the original child support order that interest would accrue. Reply at ¶¶ 11, 27–8. BFS contends that interest accrues on unpaid child support as a matter of California law and that Witaschek is charged with knowledge of the law, citing *In re Marriage of Thompson,* 41 Cal.App.4th 1049, 1057, 48 Cal.Rptr.2d 882 (1996); that this case is governed by law, not equity; and that the real inequity is found in Witaschek's failure to pay child support as ordered. *See* Closing Brief at 2, 6. This Court concludes that Witaschek's equity argument is without merit. *See United Student Aid Funds Inc. v. Taylor (In re Taylor),* 223 B.R. 747, 754 (9th Cir. BAP

1998) (a bankruptcy court cannot use its equity powers to circumvent specific statutory provisions making certain debts nondischargeable); *see also, Aguero v. Aguero,* 1999 OKCIVAPP 38, ¶ 25, 976 P.2d 1088, 1094 (Okla.1999) ("[E]quitable defenses are not available to excuse noncompliance with a support order that is clearly supported by public policy.").

■ In his Trial Brief, Witaschek makes two additional arguments seeking to avoid liability for interest that accrued on his prepetition child support debt. First, he makes a tolling argument based on "a long recognized principle of law that tender of the principal debt tolls the running of interest thereon" citing a non-bankruptcy case, *State ex rel. Marland v. Phillips Petroleum Co.,* 1941 OK 66, 118 P.2d 621 (Okla.1941).[18] Trial Brief at 4. Witaschek contends that once he paid the "principal balance" of $7,275 described in the Administrative Income Assignment Order and in the Plan, "the only amount still due and owing ... was any non-dischargeable interest that accrued outside the plan post-petition," and that California should be precluded from accruing interest on "the outstanding interest only balance." *Id.* This argument presumes that the Administrative Income Assignment Order established the amount due and owing on the petition date—an argument already rejected by this Court, but concedes that interest accrued postpetition. Witaschek ignores the effect of California law which requires BFS to apply payments received first to current support, then to interest and finally to principal, so that the balance owed by Witaschek on completion of his plan included not only unpaid interest but

---

18. In *Marland,* the court reversed judgment against Phillips for interest because Phillips was ready and willing at all times to pay the full amount it believed it owed the State. *Id.* at 631, 118 P.2d 621. That "long recognized principle" contemplates that the tender must be of the entire amount due—i.e. in one payment, not in installments. *See id.* at 630, 118 P.2d 621.

principal which continues to accrue interest. *See Thompson,* 41 Cal.App.4th at 1056, 48 Cal.Rptr.2d at 885–86. As BFS correctly points out, the Full Faith and Credit Act (28 U.S.C. § 1738) requires this Court to give preclusive effect to California's statutes which mandate the accrual of interest on unpaid child support and the application of child support payments. *See* Creditor's Brief at 2. The Court concludes that interest continued to accrue on the unpaid child support. *See Leeper v. Penn. Higher Educ. Assistance Agency,* 49 F.3d 98, 104 (3rd Cir.1995) ("[E]ven if the non-dischargeable debt has been paid in full by the bankruptcy estate, accrual of post-petition interest is not precluded."); *accord, Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee),* 218 B.R. 916, 919–22 (9th Cir. BAP 1998), *aff'd,* 193 F.3d 1083 (9th Cir.1999).

■■■ Second, Witaschek contends that BFS/California "should be estopped from bring [sic] their claim for interest, as they never requested interest from Debtor until the year 2000." Trial Brief at 4. In support of that argument, Witaschek cites *DePaolo* and paraphrases the elements of equitable estoppel set out in *DePaolo,* but omits the initial and most important requirement that Witaschek must show that California/BFS engaged in affirmative misconduct.[19] *DePaolo,* 45 F.3d at 377. In *DePaolo,* the Tenth Circuit found that the IRS' failure to advise the debtors that the proofs of claim might not reflect the full amount due did not constitute affirmative misconduct. *Id.* Even assuming that Witaschek did not receive notice of BFS' late filed proof of claim which included prepetition interest, BFS was stayed by the Confirmed Plan's "Other Provisions" from attempting to collect postpetition interest from Witaschek during the pendency of his bankruptcy and was precluded from contacting Witaschek prior to discharge regarding its claim. In any event, Witaschek has not shown that BFS engaged in affirmative misconduct by waiting almost nine months after discharge to notify Witaschek of its claim for interest. In *Loving,* the court sympathized with a Chapter 13 debtor but found that a creditor who waited almost four years after discharge before attempting to collect over $10,000 as the balance due on student loans was not barred by laches or equitable estoppel. *See Loving,* 269 B.R. at 662; *see also, Lugo v. Lugo (In re Marriage of Lugo),* 170 Cal.App.3d 427, 435–36, 217 Cal.Rptr. 74, 79 (Cal.Ct.App.1985) (citations and internal quotations omitted) (estoppel will not be applied against a county which provided AFDC assistance but took no action for five years to collect child support ar-

---

**19.** Witaschek's reliance on *DePaolo* is self-defeating as the Tenth Circuit strongly supports the unavailability of equitable estoppel in this case:

> Courts generally disfavor the application of the estoppel doctrine against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws. Thus, equitable estoppel against the government is an extraordinary remedy. It is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances. However, even assuming estoppel could be applicable, the Court has indicated that there must be a showing of affirmative misconduct on the part of the government. Affirmative misconduct is a high hurdle for the asserting party to overcome. Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct.

45 F.3d at 377–78 (internal quotations and citations omitted). *See also, Hardin County Dep't of Human Services v. Lamb (In re Lamb),* 198 B.R. 511 (Bankr.N.D.Ohio 1996).

rearages when to do so would nullify a strong rule of policy, adopted for the benefit of the public.).

Witaschek has presented no authority that interest on child support is dischargeable or can be avoided under the circumstances of this case. The Court concludes as a matter of law that postpetition interest on a nondischargeable child support debt continues to accrue during the pendency of a chapter 13 proceeding and survives discharge as a personal liability of the debtor. *See County of Sacramento v. Foross (In re Foross)*, 242 B.R. 692, 693–94 (9th Cir. BAP 1999); *Mudd v. Jacobson (In re Jacobson)*, 231 B.R. 763 (Bankr. D.Ariz.1999).

**Conclusion**

Having found Witaschek's arguments unpersuasive and unsupported by legal authority, the Court concludes that no additional injunction should issue, that Witaschek's child support debt was not discharged, that BFS is not precluded from collecting the amounts due and owing on the debt, including interest which accrued during the pendency of the Chapter 13 case and thereafter, and that BFS has not violated the discharge injunction.

A judgment consistent with this Memorandum Opinion will be entered contemporaneously herewith.