**In re COMPUSPEAK, INC., Debtor.**

**Compuspeak, Inc., Plaintiff,**

**v.**

**Dennis Simmons, Defendant.**

**Bankruptcy No. 98–20141.**

**Adversary No. 99–6065.**

United States Bankruptcy Court, D. Kansas.

Aug. 16, 2001.

Paul M. Hoffman, Morrison & Hecker, L.L.P., Kansas City, MO, for Unsecured Creditors Committee.

Max Jevinsky, Berman, DeLeve, Kuchan & Chapman, L.C., Kansas City, MO, for Compuspeak, Inc.

F. Stannard Lentz, Lentz & Clark, P.A., Overland Park, KS, for Dennis Simmons.

### MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Compuspeak, Inc.'s reorganization plan retained the existing Unsecured Creditors Committee to enforce the debtor's avoidance actions after confirmation of the plan. The plan also named a law firm to bring the actions as special counsel for the Committee. After the court confirmed the plan, a member of the law firm brought this avoidance action. But the Committee had failed to obtain a court order approving the attorney as a professional. When defense counsel discovered this omission at the commencement of trial, he moved to dismiss the action, claiming it was unauthorized.[1]

This case presents two questions: First, should the Committee have obtained the court's approval of its special counsel as a professional to conduct post-confirmation litigation? The court rules that the Committee should have obtained an order approving its special counsel as a professional because (1) the plan language does not dictate otherwise, (2) the plan language does not adequately disclose to plan voters the employment terms of special counsel, and (3) the plan language does not inform the voters that special counsel is exempt from showing lack of adverse interest.

Second, should the complaint be dismissed because the Committee did not obtain an order approving its special counsel

1. The Unsecured Creditors Committee appears by its attorney, Paul M. Hoffman of Morrison & Hecker, L.L.P., Kansas City, Missouri. Compuspeak, Inc., appears by its attorney, Max Jevinsky of Berman, DeLeve, Kuchan & Chapman, L.C., Kansas City, Missouri. Defendant Dennis Simmons appears by his attorney, F. Stannard Lentz of Lentz & Clark, P.A., Overland Park, Kansas.

as a professional? The court rules that although the Committee should have obtained approval of its special counsel as a professional, the Committee did consent to the filing of the action by special counsel; therefore, the action should not be dismissed.

## Background

Shortly after Compuspeak filed its voluntary Chapter 11 petition in January 1998, the United States Trustee appointed an Unsecured Creditors Committee, and the court approved Paul M. Hoffman as counsel for the Committee. After a year of negotiations, Compuspeak proposed a plan of liquidation. All creditor classes voted in favor of the plan, and the court confirmed it on March 17, 1999.

The confirmed plan continued the existence of the Unsecured Creditors Committee, with its counsel, and granted the Committee the "right to seek appointment of special counsel"[2] to pursue post-confirmation avoidance actions. The plan also authorized the Committee to employ the law firm of Berman, DeLeve, Kuchan & Chapman, L.C., as that special counsel.

In July 1999, Max Jevinsky, a member of the Berman firm, filed this adversary proceeding against insider Dennis Simmons in the name of the debtor.[3] The complaint charged Mr. Simmons with receiving a prepetition fraudulent conveyance. F. Stannard Lentz entered his appearance as counsel for Mr. Simmons.

After scheduling the cause for trial, the court noticed that the court file did not contain an order approving Mr. Jevinsky as a professional to represent the Committee. On the morning of trial, wondering whether this omission might adversely affect Mr. Jevinsky's later claim for attorney's fees, the court asked him why he had not been approved as a professional. Mr. Jevinsky expressed surprise and suggested that if he had not been approved, it was because the Committee's counsel, Mr. Hoffman, had overlooked obtaining the order.

At this point, F. Stannard Lentz lodged an oral motion to dismiss the adversary action, claiming it was unauthorized because Mr. Jevinsky had not been approved as a professional. This motion caused the court to abort the trial and schedule a status conference.

At the status conference, Paul Hoffman appeared for the Committee. He pointed out that the confirmed plan authorized the employment of Berman, DeLeve, Kuchan, & Chapman, L.C., as special counsel to conduct post-confirmation litigation against insiders and that Max Jevinsky is a member of that firm. Since Mr. Jevinsky is a member of the firm authorized in the plan, and the confirmed plan is entitled to res judicata effect, Mr. Hoffman argued that the Committee was not required to obtain approval of Mr. Jevinsky as a professional. The confirmed plan being entitled to res judicata effect, in his view, distinguished this case from the usual pre-confirmation situation in which special counsel can serve the estate only after court approval as a professional under § 327 and Rule 2014.

To give the question full consideration, the court requested briefs. Counsel furnished the briefs as part of a pretrial order, and the court took the matter under advisement.

---

**2.** Plan of Reorganization filed January 20, 1999 (Doc. # 207), ¶ 5.2 at 10.

**3.** The court finds that this proceeding is core under 28 U.S.C. § 157 and that the court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

## Overview of the Plan

The structure of the plan is uncomplicated. First, the plan calls for the liquidation of the estate in a manner analogous to a Chapter 7 liquidation, i.e., the estate remains in existence until distribution. The plan creates a Distribution Fund to be funded from: (1) all future recoveries from avoidance actions, (2) existing property of the estate, and (3) the proceeds of future estate property sales.

Second, all recoveries of proceeds from sales and from avoidance actions, net of fees and expenses, are to be deposited into the Distribution Fund before any payment to creditors takes place. When avoidance litigation is completed, the contents of the Distribution Fund are to be paid to the unsecured creditors. Thus, the plan will not be substantially consummated until distribution.

Third, the debtor and the Committee are to share the avoidance action duties. The debtor is to prosecute actions against both insiders and non-insiders while the Committee is to sue insiders if the debtor elects not to do so.

Fourth, the post-confirmation attorneys' fees of counsel for the debtor and the Committee are to be based on customary hourly rates. These fees, however, are to be paid without court approval unless the debtor or the Committee disputes the reasonableness of the fees and expenses.

Fifth, although special counsel is to represent the Committee, the plan does not mention attorney's fees or any contingent fee arrangement for special counsel.

Sixth, and finally, the plan expressly reserves jurisdiction of the court over the post-confirmation avoidance litigation to be conducted by special counsel.

## The Controlling Plan Language

■ Turning now to the language of the plan controlling this decision, the court notes that certainly, as Mr. Hoffman argues, a final order confirming a Chapter 11 plan and the plan terms approved by that order are entitled to res judicata effect.[4] But that effect must not extend beyond the true meaning of the plan language. That meaning informs the decisions of those interested parties voting on confirmation of the plan.

■ The court concludes that here the plan language conveys an intent to have special counsel approved by the court according to the procedures customarily followed in the period between the filing of a petition and the confirmation of a plan.

Sections 5.2 and 5.3 of the plan set forth the language controlling this decision. These sections declare that the existing Creditors Committee is retained, subject to the duties outlined in § 1103, until distribution. The Committee's retention is for the purpose of prosecuting post-confirmation avoidance litigation against insiders, such as Dennis Simmons, if the debtor itself elects not to pursue those causes of action.

5.2 *Survival of Committee.* The Committee shall continue to exist after confirmation of the Plan until completion of distributions under the Plan. The Committee shall continue to be represented by its existing counsel, and shall have the right to seek appointment of special counsel for the purpose of pursuing any causes of action specified in Section 5.3 below. In this regard, the Committee shall be and hereby is authorized to employ the law firm of Berman, DeLeve, Kuchan and Chapman, L.C. on the terms identified in that certain letter dated October 27, 1998. The Committee

---

4. *Andersen v. UNIPAC–NEBHELP, et al. (In re    Andersen),* 179 F.3d 1253 (10th Cir.1999).

shall further retain all of the powers and duties of a Committee under Section 1103 of the Code.

5.3 *Liquidation of Causes of Action.* The Debtor and the Committee shall communicate and cooperate in the liquidation, by settlement or litigation, of all causes of action the Debtor may have against any entity. The Committee will pursue and liquidate any causes of action the Debtor may have against or related to insiders which the Debtor's counsel elects not to pursue. . . .

## "The Right to Seek Appointment"

The second sentence of Section 5.2 states, "The Committee shall continue to be represented by its existing counsel, and shall have *the right to seek appointment of special counsel* for the purpose of pursuing any causes of action specified in Section 5.3 below." [5] The significant phrase in this sentence is "the right to seek appointment of special counsel." This expression is not favorable to the Committee since it is difficult to imagine from whom the Committee could "seek" appointment of special counsel if it were not from the court. To creditors and other interested parties, this plan language suggested that the Committee would follow the normal employment procedure requiring a professional to show disinterestedness and lack of adverse interest. And nothing in the language suggests that the mere confirmation of the plan would act to appoint special counsel free from court supervision.

In this case, the confirmation of the plan certainly "appointed" the Unsecured Creditors Committee as estate representative to retain the claims or interests of the estate for post-confirmation enforcement.

No one has claimed otherwise. And it is evident that under § 1123(b)(3)(B), as interpreted by the 1989 Tenth Circuit decision of *In re Sweetwater*,[6] confirmation of the plan alone acted to "appoint" the Committee as such a representative. But there is no comparable Code section sanctioning the appointment of special counsel for a retained Unsecured Creditors Committee by merely confirming a plan. Nor can the language of § 1123(b)(3)(B) be stretched to include special counsel to the estate representative.

## "Authorized to Employ"

The next sentence of Section 5.2 states, "In this regard, the Committee shall be and hereby is *authorized to employ* the law firm of Berman, DeLeve, Kuchan and Chapman, L.C. on the terms identified in that certain letter dated October 27, 1998." [7] According to the Committee, the phrase "authorized to employ" in this sentence relieves the Committee from complying with § 327 following confirmation. The Committee says that the plan provides for employment of the Berman firm; therefore, no further approval is required.

But the Committee's argument improperly views this sentence in isolation when in fact the introductory phrase—"in this regard"—refers back to the previous sentence giving the Committee the "right to seek appointment of special counsel." When the two sentences are read together, the second sentence becomes merely a proposal to put forth the Berman firm when seeking court appointment of special counsel and to do so on the compensation terms expressed in the October 27, 1998, letter. This plan language falls short of expressing a clear intent to appoint the

---

5.  Italics added.

6.  *Citicorp Acceptance Co., Inc. v. Robison (In re Sweetwater)*, 884 F.2d 1323 (10th Cir.1989).

7.  Italics added.

Berman firm as special counsel by mere confirmation of the plan.

## Additional Grounds

Other reasons require the Committee to seek approval of special counsel through the regular pre-confirmation procedures. The first involves the purported letter of October 27, 1998, a copy of which is attached to the pretrial order. Max Jevinsky authored the letter for the Berman firm long before confirmation of the plan. The letter offered to represent the Committee in avoidance litigation for a contingency fee of 25% of any recoveries plus expenses. But, unfortunately, the letter was never furnished to plan voters. Although the plan language did seek permission to employ special counsel, neither the plan nor the disclosure statement contained the letter or a paraphrase of its contents. This omission, of course, left the voting creditors uninformed about the terms upon which the Berman firm was to be employed as special counsel. Also, the plan language is completely silent about any hourly or contingency fee arrangement for special counsel. Although the Committee may be satisfied with the Berman firm and the agreement for a 25% contingency fee, which appears reasonable on its face, the plan voters should have been informed of those employment terms. This oversight lends further reason for the court to monitor the employment of special counsel.

The final reason supporting this court's decision also involves misleading the plan voters. The plan language fails to inform the voters that special counsel can hold adverse interests and still serve the Committee. Rather, the plan language suggests that the court will screen the professional for freedom from such interests before approving employment. This is the normal procedure when "appointment" of a professional is sought during the case. If the debtor wishes to relieve special counsel of the duty to show lack of adverse interest, the plan must inform voters of the exemption. Without crystal clear plan language excluding the court's oversight, there is no reason to deviate from the statutory appointment procedures for professionals, especially in a liquidating plan that defers distribution until completion of litigation.

### In re Melridge

One case supporting the court's ruling here is the 1989 decision of the Oregon District Court in *In re Melridge, Inc.*[8] In this case, a debtor-in-possession employed special counsel after confirmation to process a claim over which the plan retained jurisdiction. The court held that § 327(e) remained applicable to the professional because the plan had retained jurisdiction over the claim.[9] Similarly, Compuspeak's plan contains a provision reserving jurisdiction over post-confirmation avoidance actions. But in this court's view that reservation is an insufficient ground for the ruling expressed in this opinion. This is because this court favors the view that a provision in a confirmed plan cannot create jurisdiction. Therefore, basing its decision on such a jurisdictional reservation would be inappropriate. While this court agrees with the result in *Melridge*, it does not agree with its reasoning on this particular point. In this court's view, the question turns instead on the res judicata effect of the plan language, which in this case is insufficient to relieve the special counsel from qualifying as a professional under § 327 and Rule 2014.

---

8. 108 B.R. 748 (D.Or.1989).

9. *Id.* at 751.

## Agency Suit

■ Finally, Dennis Simmons argues that this adversary action is, according to his terms, "ultra vires" and "unauthorized" and must therefore be dismissed. If he were correct, the action would end because the parties have stipulated in the pretrial order that the statute of limitations has expired. But, even though the court has not been called upon to appoint Mr. Jevinsky as a professional, the Committee did consent to his filing of the action. Consequently, in that sense, he did not file the action without authority; he filed it as an agent with express authority. Accordingly, the court finds that the action was authorized.

## Conclusion

The court therefore rules that in order to represent the Committee in its prosecution of post-confirmation avoidance actions, special counsel should have been approved by the court as a professional.

But, although special counsel was not so approved, Simmons' motion to dismiss the adversary proceeding should be overruled because the Committee consented to the filing of the action by Mr. Jevinsky. If Mr. Jevinsky, some other counsel, or the Committee's counsel can qualify under § 327, the court will permit trial of this adversary proceeding at a date and time to be noticed by the Bankruptcy Clerk.

## Rule 7052

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed. R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58.

IT IS SO ORDERED.