**In re Terence Tyrone BILAL, Patricia Ann Bilal, Debtors.**

**Terence Tyrone Bilal, Patricia Ann Bilal, Plaintiffs,**

**v.**

**Household Finance Corp. III, Defendant.**

**Bankruptcy No. 01–23051–13. Adversary No. 02–6015.**

United States Bankruptcy Court, D. Kansas.

Aug. 18, 2003.

Kenneth M. Gay, Consumer Advocate LLC, Lenexa, KS, Fred W. Schwinn, Livermore, CA, for Plaintiffs.

Todd W. Ruskamp, Kansas City, MO, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

This proceeding is before the court on the plaintiff-debtors' motion for summary judgment.[2] The court has reviewed the relevant materials and is now ready to rule.

About 16 months before filing for bankruptcy, plaintiff-debtors Terence Tyrone Bilal and Patricia Ann Bilal gave Household Finance Corporation III a mortgage on property that is now their home to secure a non-purchase-money loan to Mrs. Bilal and her son, Gregory Leon Miller. This transaction was covered by the federal Truth–in–Lending Act, commonly known as the TILA. So long as the mortgaged property was their home at the time, the TILA gave the Bilals a right, which could last up to three years, to rescind the transaction. When they filed for bankruptcy, the Bilals filed a Chapter 13 plan that included a provision declaring that they were rescinding the transaction with HFC and that confirmation would constitute a finding that the transaction was rescinded and HFC's mortgage was void. Despite its awareness of the plan, HFC failed to object, the plan was confirmed, and the confirmation order became final. When HFC refused to release its mortgage, the Bilals brought this adversary proceeding. They now seek a summary judgment declaring that they validly rescinded the transaction, that HFC's mortgage is void, and that certain other

consequences of the rescission have also been established. The court concludes that under the doctrine of *res judicata*, the confirmation of the Bilals' plan established that the Bilals could and did rescind their transaction with HFC and that HFC's mortgage was rendered void. However, no other consequences of the rescission of the transaction were fixed by confirmation, and none of them have been otherwise established for purposes of summary judgment.

### FACTS

Although the parties have presented additional factual assertions, the court finds that only the following facts are necessary to this decision.

In March 2000, Patricia Ann Bilal and her son, Gregory Leon Miller, borrowed money from Household Finance Corporation III in a transaction covered by the TILA. To secure the loan, Mrs. Bilal and her husband, Terence Tyrone Bilal, gave HFC a mortgage on real property located in Topeka, Kansas. HFC concedes that the property is now the Bilals' home, but disputes whether it was their home at the time of the transaction.

In connection with the transaction, HFC prepared various documents, including a "Truth–in–Lending Disclosures" and a "Notice of Right to Cancel." HFC claims it gave copies of these documents to Mrs. Bilal, Mr. Bilal, and Miller. The Bilals claim HFC gave copies only to Mrs. Bilal, supporting this allegation with affidavits from Miller and Mr. Bilal in which each swears that HFC did not give him a copy of any of the documents that he signed in connection with the transaction. The Bilals attached an unsigned copy of the No-

---

1. The plaintiff-debtors appear by their counsel, Fred W. Schwinn and Kenneth M. Gay. Defendant Household Finance Corporation III appears by its counsel, Todd W. Ruskamp.

2. Doc. # 23 and # 25 filed December 2, 2002.

tice to their complaint, but HFC has submitted a copy that has the signatures of both the Bilals and Miller under the statement, "I certify that I received this Notice in duplicate." Among other things, the Notice states, "You are entering into a new transaction and you have agreed to give us a mortgage, lien or security interest on your home in this transaction. You have a legal right under federal law to cancel this transaction and the new mortgage, lien or security interest on your home, without cost, within three business days from whichever of [three specified events] occurs last." [3]

The Bilals filed a Chapter 13 bankruptcy petition and a Chapter 13 plan in September 2001. An HFC employee signed a proof of claim one week later, and it was filed eight days after that. In the complaint that commenced this proceeding, the Bilals allege that when the employee signed the proof of claim form, HFC was aware not only of their bankruptcy case but also of the provisions of their plan. In its answer to the complaint, HFC admits this allegation, but in its response to the Bilals' motion for summary judgment, HFC asserts that its proof of claim does not show that it was aware of the plan. The court notes that while HFC's proof of claim contains nothing showing that HFC was aware of the plan, HFC has not alleged that the plan was not properly served on it or that it did not receive the plan, nor does it assert any legal arguments based on such shortcomings.

The plan contains two paragraphs under a "Home Mortgage" heading. The second paragraph, which the court will call the Rescission Provision, reads:

> The second mortgage on the Debtors' home held by Household Finance Corporation III is to be rescinded by the Debtors pursuant to 15 U.S.C. § 1635 for the reason that Household Finance Corporation III failed to provide the Debtors with the disclosures required by the Truth–in–Lending Act. The Debtors hereby rescind said transaction with Household Finance Corporation III. Confirmation of this plan shall constitute a finding that said transaction is rescinded and that any mortgage held by Household Finance Corporation III on the Debtors' property is void and unenforceable. Upon confirmation of this plan the second mortgage creditor, Household Finance Corporation III, shall take all necessary steps to release the mortgage recorded against the Debtors' home.

Neither party suggests any other provision in the plan is relevant here except for paragraph "L" under "Miscellaneous Provisions," which directs creditors wishing to participate in distributions under the plan to file proof of claim forms with the Bankruptcy Clerk's Office or have their claims disallowed. HFC did not object to the plan. The court confirmed the plan in December 2001, and HFC did not appeal the confirmation order.

In November 2001, the Chapter 13 trustee objected to HFC's proof of secured claim, alleging the claim should not be allowed because, "CLAIM IS BEING RESCINDED BY THE DEBTORS DUE TO HFC FAILING TO PROVIDE DISCLOSURE REQUIRED BY TRUTH–IN–LENDING ACT." HFC was given 30 days to object to the trustee's objection, but did not do so. An order granting the trustee's objection was entered at the end of December. HFC did not appeal that order.

---

**3.** Exhibit D to Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment

(Doc. # 33).

In a footnote to its brief, HFC alleges that the record (apparently referring to the summary judgment materials presented by the parties to this proceeding) does not show that the trustee's objection was served on HFC as required by Federal Rule of Bankruptcy Procedure 7004.[4]

In January 2002, the Bilals' attorney sent HFC a letter.[5] He noted that the plan had been confirmed, quoted the Rescission Provision, and demanded that HFC take any action necessary to reflect the termination of its security interest in the Bilals' property. HFC received the letter but has not removed its security interest from the property. In March 2002, the Bilals commenced this adversary proceeding, seeking a determination of the validity, priority, or extent of HFC's lien. They now seek a summary judgment declaring that they validly rescinded the mortgage transaction with HFC, that HFC's mortgage on their home is void and either that they have no obligation to tender anything to HFC as a result of rescinding the transaction or that their tender obligation is satisfied by HFC having an unsecured claim in their Chapter 13 bankruptcy case.

## DISCUSSION AND CONCLUSIONS

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. In articulating the standard of review for summary judgment motions, Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law.[6] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[7] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." [8]

### A. Background of the TILA

■ Some background knowledge about the TILA is helpful when evaluating claims made under it. Congress enacted the TILA to regulate the disclosure of the terms of consumer credit transactions in order "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual cost of financing." [9] Disclosure allows consumers to compare different financing options and their costs.[10] To encourage compliance, TILA violations are measured by a strict liability standard, so even minor or technical violations impose liability on the credi-

---

4. *See* Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, Doc. # 33, at 10, n. 2.

5. Exhibit "K" to Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Doc. # 24).

6. Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056.

7. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

8. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).

9. *Morris v. Lomas & Nettleton Co.*, 708 F.Supp. 1198, 1203 (D.Kan.1989) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363–69, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)).

10. 15 U.S.C.A. § 1601(a).

tor.[11] The consumer-borrower can prevail in a TILA suit without showing that he or she suffered any actual damage as a result of the creditor's violation of the TILA.[12]

## B. TILA provisions and implementing regulations that are relevant to the Bilals' plan

This proceeding involves a non-purchase-money loan[13] secured by property that the Bilals claim is their home, their "principal dwelling," as the TILA calls it. Assuming that the property was the Bilals' principal dwelling at the time of the transaction, as HFC apparently then believed it was, the borrowers in such a transaction have a right to rescind that is established by TILA § 1635. The right to rescind lasts for only three days so long as the lender gives the borrower the disclosures required by the TILA and a notice of the right to rescind; the right lasts up to three years if the lender fails to give the disclosures and notice. Section 1635 provides in pertinent part:

(a) **Disclosure of obligor's right to rescind**

Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

. . . .

(f) **Time limit for exercise of right**

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except [the time can be extended further if an agency empowered to do so has instituted a proceeding to enforce the TILA within three years of the transaction and certain other criteria are met].[14]

The Board of Governors of the Federal Reserve System, the "Board" referred to in the statute,[15] has promulgated extensive

---

**11.** *See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir.1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of [the TILA and Regulation Z] be absolutely complied with and strictly enforced.").

**12.** *Herrera v. First Northern Savings and Loan Ass'n,* 805 F.2d 896, 900 (10th Cir.1986).

**13.** *See* 15 U.S.C.A. § 1635(e)(1) and § 1602(2) (exempting from § 1635 liens against consumer-borrowers' homes that secure the financing of the acquisition or initial construction of the homes).

**14.** 15 U.S.C.A. §§ 1635(a), (c), & (f).

**15.** TILA § 1602(b), 15 U.S.C.A. § 1602(b).

regulations implementing the TILA,[16] all of which it calls Regulation Z.[17] Regulation Z § 226.23(a)(1) provides (with exceptions not applicable here): "In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction...."[18] Section 226.23(a)(2) adds, "To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication."[19]

Under the statute and regulation, then, both Mr. and Mrs. Bilal had a right to rescind the transaction with HFC so long as the property was their principal dwelling. The fact that HFC gave at least one of them the Notice about the right to rescind indicates that HFC thought at the time of the transaction that the property was the Bilals' home so they were entitled to a right to rescind. Mr. Bilal's sworn statement that HFC did not give him any copies of the Notice establishes that the Bilals have asserted a colorable claim that their right to rescind still existed when they filed their bankruptcy petition and plan about 19 months after the date of the transaction. This means the Bilals' plan did not seek legal relief that was clearly not available to them except with HFC's consent. The TILA and Regulation Z established a legal right in the transaction that could still have existed when they filed the plan. In this district, a Chapter 13 debtor's complete plan is mailed to all the creditors listed on the mailing matrix

the debtor has submitted. So, by filing their plan, the Bilals caused the mailing of a written communication to HFC notifying it that they were exercising their right to rescind. As long as a plan provision like the Rescission Provision is sufficiently clear, the court sees no reason why the mailing of the plan to the creditor could not satisfy the requirement of Regulation Z § 226.23(a)(2) that the borrower notify the creditor of his or her exercise of the right to rescind. The clarity of the Rescission Provision will be addressed in the next section.

## C. Effect of confirmation of the plan

The Bilals contend that under the doctrine of *res judicata*, the confirmed plan bars HFC from contesting the voiding of its mortgage in accordance with the Rescission Provision. To support this claim, they rely on the Tenth Circuit's decision in *Andersen v. UNIPAC–NE-BHELP (In re Andersen).*[20] In *Andersen,* a Chapter 13 debtor proposed a plan providing that she would pay ten percent of all her allowed unsecured claims, including certain student loan claims, and that confirmation of her plan would constitute a finding, pursuant to § 523(a)(8) of the Bankruptcy Code, that excepting the student loan debts from the discharge would impose an undue hardship on her and her dependents, making the balance of the debts dischargeable.[21] The student loan creditor filed an objection to the plan that was denied as untimely, the plan was confirmed, and the creditor failed to appeal either ruling.[22] The debtor completed her

16. 12 C.F.R. Part 226 (2003).

17. *See* 12 C.F.R. § 226.1(a).

18. 12 C.F.R. § 226.23(a)(1).

19. 12 C.F.R. § 226.23(a)(2).

20. 179 F.3d 1253 (10th Cir.1999).

21. *Id.* at 1254.

22. *Id.*

plan payments and received a discharge.[23] Then, ECMC, as the successor holder of the student loan debts, tried to collect from the debtor.[24] The debtor reopened her bankruptcy case to seek a determination that the debts had been discharged.[25] The bankruptcy court ruled that the debts were not discharged because the debtor had not obtained a formal judicial determination of undue hardship, but the Tenth Circuit Bankruptcy Appellate Panel reversed, and ECMC appealed.[26] The Tenth Circuit said: "[I]n light of [ECMC's predecessor's] repeated failure to timely and properly challenge Andersen's plan during the course of the bankruptcy proceedings, along with the res judicata effect of the confirmed plan and strong policy favoring finality, we hold that the balance of Andersen's student loan debt is discharged pursuant to the confirmed plan and the order of discharge."[27] The Circuit's decision gave effect to § 1327(a) of the Bankruptcy Code, which provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."[28]

HFC makes two arguments against the Bilals' res judicata claim. First, it contends that the inclusion of the Rescission Provision in the plan is contrary to the requirement of Federal Rule of Bankruptcy Procedure 7001(2) that an attempt to question the validity, priority or extent of a lien in property must be brought as an adversary proceeding. Second, it contends that the language of the Rescission Provision is inconsistent and contradictory and did not give it adequate notice that the Bilals were currently exercising their alleged right to rescind the transaction and void HFC's mortgage.

HFC's first argument is easily answered. In the course of reaching its ultimate conclusion in *Andersen*, the Tenth Circuit rejected the argument that a creditor could complain about the lack of an adversary proceeding long after the debtor's plan had been confirmed, saying:

> A creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests. [Citations omitted.] We do not believe that ECMC can now excuse [its predecessor's] failure to protect its interests by arguing that [the debtor] failed to prove undue hardship in an adversary proceeding. This argument should have been raised in a timely filed objection to the plan prior to confirmation, or argued subsequently in a timely filed appeal attacking the confirmed plan. Neither was done here.[29]

Because the order confirming the Bilals' plan has become final, HFC (like ECMC) cannot now attack the order on the ground the Bilals used an improper procedure to obtain relief they included in the plan. While HFC may "disagree[ ] with the conclusions reached by the Tenth Circuit"[30] in *Andersen*, this court is not free to ignore its obligation to follow the Circuit's rul-

---

23. *Id.*

24. *Id.* at 1254–55.

25. *Id.* at 1255.

26. *Id.*

27. *Id.* at 1259.

28. 11 U.S.C.A. § 1327(a).

29. 179 F.3d at 1257.

30. Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. # 33, at 9.

ings.[31]

HFC's second argument has somewhat more substance, but is similarly unconvincing. To support it, HFC cites this court's decision in *Compuspeak, Inc. v. Simmons (In re Compuspeak, Inc.)*,[32] which concerned the effect of certain language in a confirmed Chapter 11 plan. The relevant part of that decision addressed the question whether, following confirmation, the Unsecured Creditors Committee had to seek the court's approval of its employment of special counsel as a professional.[33] This court ruled that a confirmed plan has *res judicata* effect only to the extent its provisions give clear notice to creditors and any other interested parties that the plan will have the claimed effect.[34]

HFC argues that the first sentence of the Rescission Provision—"The second mortgage on the Debtors' home held by [HFC] is to be rescinded by the Debtors pursuant to 15 U.S.C. § 1635 for the reason that Household Finance Corporation III failed to provide the Debtors with the disclosures required by the Truth–in–Lending Act"—suggests that the Bilals' effort to rescind the mortgage was prospective and they were going to take future action to rescind it. This view, HFC adds, is supported by the alleged requirement of the Bankruptcy Rules that the Bilals file an adversary proceeding in order to challenge the validity of a lien. Of course, *Andersen* makes clear that if the creditor fails to object, a bankruptcy plan can provide relief that the debtor would otherwise be able to obtain only through an adversary proceeding. HFC concedes the Rescission Provision goes on to state that confirmation shall constitute a finding that the transaction is rescinded, but argues the Provision, taken as a whole, is inconsistent and unclear. The court cannot agree. The second sentence of the Rescission Provision reads: "The Debtors hereby rescind said transaction with Household Finance Corporation III." This sentence eliminates any possible ambiguity about whether the Bilals intended to rescind the transaction through the plan itself or only by taking some later action. As indicated earlier, Regulation Z provides that a consumer-borrower exercises the right to rescind by notifying the creditor "by mail, telegram or other means of written communication" that he or she is doing so,[35] and the court believes the Bilals' plan provided the requisite notice to HFC.

The balance of the Rescission Provision declares that confirmation will rescind the transaction and void HFC's mortgage and requires HFC to release its mortgage. The balance reads:

> Confirmation of this plan shall constitute a finding that said transaction is rescind-

---

**31.** *See* 18 James Wm. Moore et al., Moore's Federal Practice—Civil, § 134.02[2] (3d ed.2003) (district courts owe obedience to circuit court of appeals in same circuit); 28 U.S.C.A. § 151 (bankruptcy judges in regular active service constitute a unit of the district court); *see also* Vol. I, National Bankruptcy Review Commission Final Report, "Bankruptcy: The Next Twenty Years," Chapter 3, Jurisdiction, Procedure and Administration, Discussion of Recommendation 3.1.3, *Bankruptcy Appellate Process* (Oct. 20, 1997), *reprinted in* App. G, Collier on Bankruptcy at App. Pt. 44–747 to –750 (15th ed. rev., Alan N. Resnick & Henry J. Sommer, eds.-in-chief,

2003) (pointing out that court of appeals decisions in bankruptcy cases bind all courts within a circuit, while *stare decisis* effect of district court and bankruptcy appellate panel decisions is disputed and sometimes held to be limited or nonexistent).

**32.** 268 B.R. 286 (Bankr.D.Kan.2001).

**33.** *See id.* at 289–91.

**34.** *Id.* at 289–91.

**35.** Regulation Z § 226.23(a)(2), 12 C.F.R. § 226.23(a)(2) (2003).

ed and that any mortgage held by Household Finance Corporation III on the Debtors' property is void and unenforceable. Upon confirmation of this plan the second mortgage creditor, Household Finance Corporation III, shall take all necessary steps to release the mortgage recorded against the Debtors' home.

Nothing in either of these sentences resurrects the ambiguity that would exist if the Rescission Provision had been comprised only of its first sentence. Furthermore, the first two sentences of the Provision indicate only that the Bilals are trying to exercise their right to rescind, saying nothing about the effect the rescission would have if it were valid. Only these last two sentences address that question and therefore challenge the validity of HFC's lien, making Bankruptcy Rule 7001(2) applicable. The court believes that HFC needs to point out some inconsistency or confusion in these sentences to justify its failure to object to the plan as having resulted from reliance on the asserted requirement of the Bankruptcy Rules that such relief could be obtained only through an adversary proceeding. The first two sentences clearly inform HFC that the Bilals are exercising their right to rescind their transaction with it, and the last two clearly inform HFC that confirmation of the plan would make its mortgage void. Under *Andersen*, this means that HFC can no longer contest whether the Bilals still had a right to rescind the transaction when they filed their plan or whether the Bilals' exercise of that right rendered HFC's mortgage void.

Finally, HFC suggests that the plan provision directing creditors to file proofs of claim if they want to share in the distributions from the bankruptcy estate is inconsistent with reading the Rescission Provision to mean that the Bilals were rescinding their transaction with HFC and

voiding its mortgage. However, while rescission under TILA § 1635 and Regulation Z § 226.23 has other potential effects besides voiding the creditor's mortgage, the Bilals' plan provides only that confirmation would conclusively establish that they had rescinded their transaction with HFC and that the rescission would void HFC's mortgage. A creditor that had a secured claim against a debtor does not ordinarily lose its claim against the debtor merely because its security interest has been defeated in some way. The creditor simply becomes an unsecured creditor. Because the Bilals' plan provides that their rescission is effective and that HFC's mortgage is void, that is the only relief that *Andersen* precludes HFC from contesting now. Other consequences of the rescission must be found in TILA § 1635 and Regulation Z § 226.23, because no other consequences are included in the plan.

### D. Other effects of rescission on HFC's claim against the Bilals

■ Having concluded that the confirmed plan establishes that the Bilals have effectively rescinded their transaction with HFC, the court must next consider the Bilals' assertions that: (1) either HFC's failure to react to their rescission excuses them from any obligation to tender any money or property to HFC; or (2) their obligation to tender money or property to HFC is simply an unsecured claim against their Chapter 13 bankruptcy estate. HFC responds that the Bilals not only have an obligation to tender money or property to it, but that the court should condition their rescission of the transaction with HFC, and the voiding of HFC's mortgage, on their tender. As already explained above, the court is convinced that the confirmation of the plan rendered HFC's mortgage void. This is true whether or not the

voiding of the mortgage would be a proper effect of rescission under the TILA. The court notes that the Bilals make no argument in their summary judgment motion that the order granting the trustee's objection to HFC's claim has any impact in this proceeding, so the court will not consider that possibility in this order. Instead, the court will address only the consequences of rescission under the TILA, other than its effect on HFC's mortgage.

TILA § 1635(b) is the statutory declaration of the consequences of a borrower's exercise of the right to rescind a non-purchase home mortgage transaction. Under it, the borrower is excused from paying finance charges, the lender's mortgage becomes void, the lender must return to the borrower any money paid to the lender, and then the borrower must return to the lender the amount loaned. The courts are given authority to modify at least some of these effects. The actual statutory language reads:

**(b) Return of money or property following rescission**

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.[36]

Regulation Z § 226.23(d) clarifies the courts' power to modify the consequences of rescission by stating the consequences in three paragraphs and specifying that the courts can modify only those contained in the second and third paragraphs. The first paragraph includes the voiding of the mortgage and the forgiveness of the finance charge, the second includes the lender's tender obligation, and the third includes the borrower's tender obligation. The regulation reads:

(d) Effects of rescission.

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

---

36. 15 U.S.C.A. § 1635(b).

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.[37]

Some courts have applied this regulation literally, holding that the rescission consequences stated in paragraph (d)(1) occur automatically and cannot be altered by a court.[38] Many (probably more) others have held that courts can use their equitable powers to condition the voiding of the creditor's mortgage on the borrower's actual tender of money or property under paragraph (d)(3).[39] The courts do seem to agree, though, that it is appropriate to modify the requirements of paragraphs (d)(2) and (d)(3) by allowing the creditor to set off its obligations under (d)(2) against the borrower's obligations under (d)(3), rather than making the creditor pay first.[40]

■ The Bilals' first argue that they have no obligation to tender anything to HFC under Regulation Z § 226.23(d)(3) because HFC has not yet tendered anything to them under paragraph (d)(2), apparently meaning that HFC has permanently waived their tender obligation by failing to perform its own tender obligation. Both TILA § 1635(b) and Regulation Z provide that the borrower's obligation to tender money or property to the creditor ends if the creditor fails to take possession of the money or property within 20 days of the tender, but they do not state that a similar penalty applies if the creditor fails to satisfy its own tender obligation after receiving the borrower's notice of rescission. The court believes the appropriate remedy for the latter failure is that provided in TILA § 1640(a) for any violation of the TILA, which includes actual damages plus a statutory penalty, but does not include forfeiture of the borrower's repayment or tender obligation.[41]

---

**37.** Regulation Z § 226.23(d), 12 C.F.R. § 226.23(d).

**38.** *E.g., Celona v. Equitable National Bank*, 98 B.R. 705, 707–08 (E.D.Pa.1989); *Quenzer v. Advanta Mortgage Corp. (In re Quenzer)*, 266 B.R. 760 (Bankr.D.Kan.2001), *rev'd* 288 B.R. 884 (D.Kan.2003); *Ralls v. Bank of New York (In re Ralls)*, 230 B.R. 508, 521–22 (Bankr. E.D.Pa.1999); *see also Myers v. Federal Home Loan Mortgage Co. (In re Myers)*, 175 B.R. 122, 128–29 (Bankr.D.Mass.1994) (applying Massachusetts law that is essentially the same as § 1635, and relying on cases decided under TILA).

**39.** *See, e.g., Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir.1992); *Apaydin v. Citibank Federal Savings Bank (In re Apaydin)*, 201 B.R. 716, 723–24 (Bankr. E.D.Pa.1996); *Thorp Loan and Thrift Co. v. Buckles (In re Buckles)*, 189 B.R. 752, 765–67 (Bankr.D.Minn.1995); *Lynch v. GMAC Mortgage Corp. (In re Lynch)*, 170 B.R. 26, 29 (Bankr.D.N.H.1994).

**40.** *See, e.g., Celona*, 98 B.R. at 708; *Quenzer v. Advanta Mortgage Corp. (In re Quenzer)*, 274 B.R. 899, 904–06 (Bankr.D.Kan.2001); *Ralls*, 230 B.R. at 523–24; *Buckles*, 189 B.R. at 766–67 & n. 25, & at 769; *Lynch*, 170 B.R. at 30–31.

**41.** 15 U.S.C.A. § 1640(a).

 At this point, however, the court does not believe that it can determine the correct amount of HFC's now unsecured claim. The Bilals' confirmed plan bars HFC from contesting their right to rescind and the voiding of its mortgage, but does not establish that HFC in fact violated the TILA because it did not say anything about that possibility. The *res judicata* effect of the plan and confirmation order is limited to the plan's specific language—that the Bilals could and did rescind the transaction and that the rescission voided HFC's mortgage. Nothing in the Rescission Provision declared that HFC had violated the TILA in any way.

The Bilals contend that HFC violated the TILA by failing to give Mr. Bilal the disclosures and Notice. HFC correctly points out that the summary judgment materials do not establish that the mortgaged property was Mr. Bilal's "principal dwelling" at the time of the transaction, so they do not establish that he was entitled to receive his own copy of the TILA disclosures and two copies of the Notice.[42] There is some evidence that the property probably was his principal dwelling at the time, namely, the facts that he and Mrs. Bilal were married at the time, that they jointly owned the property and gave the mortgage to HFC, and that HFC gave at least Mrs. Bilal the Notice that was required only if the property was her principal dwelling. However, the Bilals' sworn statements that the property is presently their principal dwelling do not establish that it was also their principal dwelling at the time of the transaction with HFC.

The Bilals also contend that HFC violated the TILA by failing to give Mr. Bilal two copies of the Notice, as required by Regulation Z § 226.23(b)(1). This claim

also relies on the assumption that HFC was required to give the Notice to Mr. Bilal, an assumption that is true only if the property was his principal dwelling. Furthermore, HFC's copy of the Notice contains Mr. Bilal's signature showing that he did receive two copies of the Notice, giving rise to a rebuttable presumption that the requisite copies were given to him.[43] Mr. Bilal's sworn statement that he received no copies of the Notice does not establish for summary judgment purposes that he did not receive them; it merely constitutes sufficient evidence to raise a genuine issue of material fact that precludes summary judgment on that point. The court can resolve this question only in its role as the fact finder in this proceeding.

Finally, the Bilals allege that HFC's Notice failed to inform them adequately of their right to rescind the mortgage transaction. However, in the same way as was noted above concerning Mr. Bilal, the summary judgment materials also fail to establish that the mortgaged property was Mrs. Bilal's principal dwelling so that HFC was required to give her the Notice. Until the underlying fact that the property was the Bilals' principal dwelling at the time of the transaction is properly proven, the court need not consider whether the Notice was sufficient to satisfy the requirements of the TILA and Regulation Z.

## SUMMARY

For these reasons, the court concludes that the confirmation of the Bilals' plan establishes through the doctrine of *res judicata* that the Bilals were entitled to and did rescind their transaction with HFC and that HFC's mortgage was rendered void. In all other respects, the Bilals'

---

**42.** *See* Regulation Z § 226.17(d), 12 C.F.R. § 226.17(d); Regulation Z § 226.23(a)(1), 12 C.F.R. § 226.23(a)(1).

**43.** *See* 15 U.S.C.A. § 1635(c).

motion for summary judgment is hereby denied.

IT IS SO ORDERED.